383 S.E.2d 313

**KANAWHA VALLEY POWER
COMPANY**

v.

**Charles L. JUSTICE.**

No. 18649.

Supreme Court of Appeals of
West Virginia.

July 14, 1989.

**510**

Rudolph L. di Trapano, Lonnie C. Simmons, Charleston, for Justice.

William E. Robinson, Robinson & McElwee, Charleston, for Kanawha Power Co.

PER CURIAM:

In this case, an employee challenges the method used by his employer to deduct certain sums from payments made under a sick leave allowance plan. The Kanawha County Circuit Court held that the deductions were proper and that the employer was entitled to restitution for overpayments made by the plan. We affirm.

I.

Charles L. Justice, the defendant below, has been employed by Kanawha Valley Power Company for seven years at its Marmet facility. Kanawha Valley provides a combined sick leave and layoff allowance plan for all of its employees. The stated purpose of the sick leave plan is to allow employees to "receive [their] regular base pay while [they] are unable to work due to illness or injury."

If an employee qualifies under the sick leave plan, he receives payments equal to "the regular straight time rate [he was] receiving when [he] last worked," less deductions for certain collateral sources. As the plan explains, "[t]hese deductions are made so that an employee won't earn more while not working than while working." The deductions authorized by the plan include payments received "under any ... workers' disability compensation law."[1] In the event of an overpayment, the plan provides that all overpaid sums "will be considered an advance to [the employee]," and on discovery "will be due and payable to [Kanawha Valley]."[2]

On June 7, 1985, Justice was injured at the Marmet facility and was unable to return to work for six months. Kanawha Valley made sick leave payments to Justice in the gross sum of $10,218.80.[3] These payments were made biweekly and ended on December 9, 1985, the date of Justice's return to work. Justice concedes that the payments made by Kanawha Valley were

---

1. These various requirements are summarized in the plan as follows:

   "If you become eligible for sick pay, you will be paid on your regular pay days. Your rate of sick pay will be the regular straight time rate you were receiving when you last worked, minus deductions for certain 'Other Income'. These deductions are made so that an employee won't earn more while not working than while working. The deductions are for any benefits paid or available upon proper application under any law by reason of old age or disability, any Social Security provision, or any unemployment or insurance law or workers' disability compensation law. Any income you receive from private plans, as opposed to income provided under a law, has no effect on your sick pay benefits. If you have any questions as to the application of this provision to your own situation, please consult your Personnel Department."

2. This overpayment provision reads, in its entirety:

   "It is possible that you could be overpaid a sick leave benefit. If this happens, the overpayment will be considered an advance to you; and the amount, upon discovery of the overpayment, will be due and payable to the Company. Some of the reasons you may be overpaid are: error or mistake, subsequent determination of material fact, duration of disability, or determination of entitlement to benefits as described above [in the definition of collateral sources]."

3. Pay summaries and cancelled checks contained in the record show that the net sum paid was $6,130.94.

equal to his "regular straight time rate" of pay.

Also in June, 1985, Justice made application for workers' compensation benefits for the same injury. By order dated July 22, 1985, the Workers' Compensation Commissioner ruled that the claim was compensable on a no-lost-time basis.[4] In a subsequent order, dated December 3, 1985, the Commissioner ruled that Justice was eligible for temporary total disability benefits. The Commissioner promptly made temporary total disability payments, retroactive to June 30, 1985, in the sum of $7,014.60. These payments were made in lump sum checks delivered in December, 1985, and January, 1986.

On January 29, 1986, J.E. Sullivan, Jr., Kanawha Valley's personnel supervisor, wrote to Justice concerning his sick leave payments. Sullivan stated in the letter that Justice's workers' compensation benefits were to be deducted from the sick leave payments previously made, resulting in an overpayment. A demand was made for the full amount of the overpayment. Justice refused.

On May 5, 1986, Kanawha Valley filed suit in Kanawha County Circuit Court. In its complaint, Kanawha Valley prayed for the return of the overpayment made by the plan. Justice answered the complaint on June 3, 1986. In a counterclaim, Justice averred that he was "harassed, threatened, [and] oppressed" by Kanawha Valley to return the overpayments, and requested damages of $100,000 for consequent mental distress.

On August 14, 1987, the circuit court entered summary judgment for Kanawha Valley. In its memorandum opinion, the court rejected Justice's twin theories: (1) that the plan required all workers' compensation benefits, paid and unpaid, to be deducted at the time that sick leave payments were made, and (2) that the plan's overpayment provision was, in fact, an invalid waiver of Justice's right to receive workers' compensation benefits. This appeal followed.

## II.

### A.

We turn first to a question of contract construction,[5] viz., how does the Kanawha Valley sick leave plan provide that deductions shall be made for collateral sources? Justice reads the plan to require Kanawha Valley to reduce each sick leave payment by the amount of any actual or potential workers' compensation benefits. In support of his theory, Justice focuses on two sentences from the plan. The first defines, in part, the deductions to be made from sick leave payments as "any benefits *paid or available* upon proper application under ... any unemployment or insurance law or workers' disability compensation law."

---

4. W.Va. Code, 23-4-5, provides that if an employee is disabled for three days or less, he shall not be compensated for lost pay. We do not possess the relevant workers' compensation records and are, therefore, unaware of the reason for the Commissioner's decision.

5. This case unquestionably "relates to" Kanawha Valley's sick leave plan and is, therefore, controlled by the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* We stated in Syllabus Point 2, in part, of *Lowe v. Imperial Colliery Co.,* 180 W.Va. 518, 377 S.E.2d 652 (1988), that "[ERISA] is deemed to supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."

A question that is not raised by the parties concerns whether an employer or a plan fiduciary may sue under ERISA to recover overpayments made from a plan. 29 U.S.C. § 1132, which authorizes suits for enforcement of ERISA, does not mention overpayments. While one federal jurisdiction has concluded that employers and fiduciaries may not sue for overpayments, *NYSA–ILA GAI Fund v. Poggi,* 617 F.Supp. 847 (S.D.N.Y.1985), the better reasoned cases have concluded that suits for restitution are permissible either under ERISA or the federal common law. *Kentucky Laborer's Dist. Council Health & Welfare Fund v. Hope,* 861 F.2d 1003 (6th Cir.1988); *Naugle v. O'Connell,* 833 F.2d 1391 (10th Cir.1987); *Northern California Food Employers & Retail Clerks Union's Benefit Fund v. Dianda's Italian–American Pastry Co.,* 645 F.Supp. 160 (N.D.Cal.1986); *see also* Note, 54 Fordham L.Rev. 225 (1985) (suits by employers for overpayments made to multi-employer plans). Since this point is not raised, we need not decide it or the related issue of whether a state court enjoys subject matter jurisdiction by virtue of 29 U.S.C. § 1132.

(Emphasis added). The second explains that collateral sources "will be taken into account and coordinated with sick leave payments *during your disability period,* thereby reducing the sick leave allowance payable to [the employee]." (Emphasis added).

■ It is a well settled principle of law that where a contract is clear and unambiguous, the courts must apply it as written and not construe it. We summarized this principle in Syllabus Point 2 of *Orteza v. Monongalia County General Hosp.,* 173 W.Va. 461, 318 S.E.2d 40 (1984):

> " 'Where the terms of a contract are clear and unambiguous, they must be applied and not construed.' Syl. Pt. 2, *Bethlehem Mines Corp. v. Haden,* 153 W.Va. 721, 172 S.E.2d 126 (1969)."

■ We find Kanawha Valley's sick leave plan to be clear and unambiguous. We have already seen that the prime purpose of the plan is to allow employees "to receive [their] regular base pay" while they are sick or injured. Sick leave payments are made directly to the employee on his regular pay days. These payments are, in effect, a replacement for regular pay that serves to guarantee income while the employee is unable to earn a livelihood. A second and related aim of the plan is to prevent double recovery for the same illness or injury. This is accomplished by the deduction of collateral sources from payments made by the plan.

Justice's construction of the plan would defeat these beneficent purposes. This is so for two reasons. First, and foremost, his construction is at odds with the stated purpose of the plan. We do not doubt that the plan requires deductions to be made promptly once collateral source monies are received. But to require deductions to be made for sources that are merely potential assures that sick pay will be inadequate to meet the employee's immediate needs. It is small consolation to the employee that his sick leave payments will be reduced, but that he may possibly receive monies from other sources at some date in the future.

A second objection to Justice's construction is that it would require the employer to be a prognosticator. To properly calculate sick leave payments for any employee, Kanawha Valley would have to divine whether an application for government-sponsored benefits will be made and, if so, whether such benefits will be awarded. This would work an undue hardship on the employer, and is out of harmony with the purposes of the plan.

### B.

Justice also contends that, to the extent the plan allows for restitution of overpayments, it is an unlawful waiver of his right to receive workers' compensation. We are referred by Justice to W.Va. Code, 23–2–7, which provides that "[n]o employer or employee shall exempt himself from the burden or waive the benefits of this chapter by any contract, agreement, rule or regulation, and any such contract, agreement, rule or regulation shall be pro tanto void."

■ We most recently discussed this statute in *Jenkins v. Sal Chemical Co.,* 167 W.Va. 616, 280 S.E.2d 243 (1981). Sal Chemical was an Ohio corporation licensed to do business in West Virginia. Jenkins, a Sal Chemical employee, contracted with his employer to file any claim for work-related injuries exclusively under the Ohio workers' compensation statute. Jenkins was injured at his workplace in West Virginia. In a suit by Jenkins for his personal injuries, Sal Chemical pleaded the contract with Jenkins. We concluded that the contract was void under W.Va. Code, 23–2–7, and stated in Syllabus Point 1:

> "Any contract between an employer and employee, not specifically provided for by statute, that waives the burdens or benefits of the Workmen's Compensation Act, is void. West Virginia Code, 23–2–7."

■ Justice attempts to apply *Jenkins* to Kanawha Valley's sick leave plan. We, like the circuit court, find *Jenkins* to be inapposite. The contract in *Jenkins* required the employee to forego all rights to benefits payable under the West Virginia workers' compensation statute. Kanawha

Valley's sick leave plan does not in any sense impair Justice's ability to apply for or to receive workers' compensation benefits. Nor does Kanawha Valley attempt by this suit to recover these benefits. To the contrary, what it seeks is restitution of an overpayment made by its sick pay plan. This is not, in the words of *Jenkins*, a "waive[r] [of] the burdens or benefits" of the workers' compensation statute.[6]

### III.

We consider finally the merits of Justice's counterclaim for outrageous conduct. In his deposition testimony, Justice related that Sullivan orally demanded payment from him and said that "they were going to get [the overpayments]." On another occasion, a Kanawha Valley employee informed Justice that they "could discuss the alternatives" to his refusal to return the overpayments. Justice said that "[b]y reading between the lines," he concluded that the statement was a threat of termination. Justice also reported that his supervisor "treats [him] like a dog" and that other Kanawha Valley employees have implied that he is a thief.

We recognized the tort of outrageous conduct in *Harless v. First Nat'l Bank in Fairmont*, 169 W.Va. 673, 289 S.E.2d 692 (1982), and stated in Syllabus Point 6:

"One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."

We patterned our rule on that of the *Restatement (Second) of Torts* § 46, and commented on the limits of that rule: "[T]he conduct must be so outrageous in character, and so extreme in degree, as to

go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." 169 W.Va. at 695, 289 S.E.2d at 705. (Interior quotes omitted). And, as the *Restatement* further explains, liability may be imposed for outrageous conduct only where the distress that results is more than the "transient" and "trivial" distress that necessarily accompanies life among other people. "The law intervenes only where the distress is so severe that no reasonable man could be expected to endure it." *Restatement (Second) of Torts* § 46, comment j.

We conclude that the averments set forth in Justice's counterclaim fall short of the level of proof required by *Harless*. Of prime importance is the fact that Kanawha Valley's demand for repayment was a legitimate one. We have already found in Part II of this opinion that Kanawha Valley's deduction of collateral source monies was in accordance with the plan and that restitution was a proper remedy. Furthermore, Kanawha Valley used no express or implied threats or other impermissible vehicles of coercion. The statements made to Justice by Kanawha Valley personnel were, at best, ambiguous in their nature. They were not, to our minds, sufficiently outrageous in character to meet the strictures of *Harless* or the *Restatement*. We find that there are no triable issues of fact and that summary judgment was appropriate.

### IV.

For the reasons hereinabove stated, the judgment of the Circuit Court of Kanawha County is affirmed.

Affirmed.

---

**6.** Justice advances two other arguments that we discuss only summarily. First, he contends that Kanawha Valley's suit is improper under *National Fruit Product Co. v. Baltimore & Ohio R.R. Co.*, 174 W.Va. 759, 329 S.E.2d 125 (1985). We disagree. *National Fruit* stands for the proposition that an employer may not obtain indemnity from a third party for workers' compensation benefits paid to one of its employees. We have already stated that this suit is one for restitution, and not indemnity.

Second, it is urged that the plan does not expressly authorize a suit by the employer for recovery of overpayments and that overpayments may only be deducted from future payments. The plan, however, deems overpayments to be an "advance" that is "due and payable" on its discovery. This is sufficient to sustain a suit for restitution.