413 S.E.2d 418

**Frances COURTNEY, Individually, and Patsy Jo Compaleo, an Infant, who Sues By and Through Frances Courtney, his Mother, Plaintiffs Below, Appellants,**

v.

**Denzil COURTNEY and Maud Courtney, Defendants Below, Appellees.**

No. 20122.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 24, 1991.

Decided Dec. 19, 1991.

---

LaVerne Sweeney, Grafton, for appellants.

No one represented appellees.

MILLER, Chief Justice:

This appeal is by the plaintiffs, Frances Courtney, individually, and her infant son, Patsy Jo Compaleo, who sues by and through his mother. A final order of the Circuit Court of Taylor County dismissed two counts of their complaint for failure to state a claim upon which relief can be granted. We find this ruling to be erroneous.

## I.

Frances Courtney and Denzil Courtney were husband and wife. During their marriage, Denzil allegedly physically abused Frances and her son, Patsy Jo. After the Courtneys were divorced, Frances and Patsy Jo sued Denzil and Maud Courtney, Denzil's mother, for damages they sustained from these attacks. The complaint asserts four counts: (I) that Denzil intentionally assaulted and battered Frances; (II) that Maud was liable for Denzil's tort because she, while aware that Denzil was a manic depressive and an alcoholic, nonetheless supplied him with alcohol and drugs, which she knew would cause him to become abusive; (III) that Denzil intentionally inflicted emotional distress upon Patsy

Jo when he assaulted Frances in Patsy Jo's presence; and (IV) that Denzil intentionally assaulted and battered Patsy Jo. Both defendants filed motions to dismiss pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure.[1] In an order dated December 20, 1990, the trial court dismissed Counts II and III.

## II.

■ In Syllabus Point 3 of *Chapman v. Kane Transfer Co.*, 160 W.Va. 530, 236 S.E.2d 207 (1977), we articulated the standard trial courts should employ in determining whether to grant a motion to dismiss:

> "The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99 [102], 2 L.Ed.2d 80 [84] (1957)."

*See also Dunn v. Consolidation Coal Co.*, 180 W.Va. 681, 379 S.E.2d 485 (1989); *Price v. Halstead*, 177 W.Va. 592, 355 S.E.2d 380 (1987); *Whitehair v. Highland Memory Gardens, Inc.*, 174 W.Va. 458, 327 S.E.2d 438 (1985); *Sticklen v. Kittle*, 168 W.Va. 147, 287 S.E.2d 148 (1981). With this standard in mind, we address the merits of each claim dismissed.

## III.

We have not had occasion to decide whether a child can recover damages for severe emotional distress in the absence of a physical injury because the child witnessed a third person verbally abusing and physically assaulting his mother.

We addressed a similar issue in *Lambert v. Brewster*, 97 W.Va. 124, 125 S.E. 244 (1924), where the plaintiff suffered a miscarriage after she saw her father assaulted by the defendant. The critical difference between *Lambert* and this case is that in *Lambert*, the plaintiff suffered a physical injury as a result of defendant's conduct. In Syllabus Point 3 of *Lambert*, we held:

> "Where defendant wrongfully and violently assaulted and beat plaintiff's father, in plaintiff's sight and hearing, thereby causing her to be greatly frightened, and as a consequence thereof she suffered a miscarriage, defendant is liable to the plaintiff for all damages which can be directly traced to his wrongful conduct, even though he was not aware of her presence or her delicate condition."

*Lambert* was our first case to recognize a tort for physical injury "even though there was no physical impact between the body of the person injured and the wrongdoer, or any object set in motion by him." Syllabus Point 2, in part, *Lambert v. Brewster, supra.*

In *Harless v. First National Bank*, 169 W.Va. 673, 289 S.E.2d 692 (1982), we recognized that damages could be recovered for the intentional infliction of emotional distress even though the plaintiff suffered no physical injury. This cause of action is often termed the "tort of outrageous conduct" and has been recognized by a number of jurisdictions.[2] In Syllabus Point 6 of *Harless*, we adopted Section 46(1) of the *Restatement (Second) of Torts* (1965):

> "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." [3]

---

1. Rule 12(b)(6) of the Rules of Civil Procedure provides: "Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: ... (6) failure to state a claim upon which relief can be granted[.]"

2. *See generally* Annot., 64 A.L.R.2d 100 (1959).

3. Section 46(1) of the *Restatement* provides: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."

In *Harless,* a bank employee had been fired for attempting to have the bank comply with state and federal consumer credit and protection laws. He filed suit for retaliatory discharge and for intentional infliction of emotional distress. We concluded in *Harless* that because emotional distress damages could be recovered in a retaliatory discharge cause of action, duplicate damages would be obtained if a cause of action for intentional infliction of emotional distress were permitted on the same set of facts. We nonetheless outlined the contours of a cause of action for the intentional infliction of emotional distress by quoting from *Womack v. Eldridge,* 215 Va. 338, 342, 210 S.E.2d 145, 148 (1974):

" '[A] cause of action will lie for emotional distress, unaccompanied by physical injury, provided four elements are shown: One, the wrongdoer's conduct was intentional or reckless. This element is satisfied where the wrongdoer had the specific purpose of inflicting emotional distress or where he intended his specific conduct and knew or should have known that emotional distress would likely result. Two, the conduct was outrageous and intolerable in that it offends against the generally accepted standards of decency and morality. This requirement is aimed at limiting frivolous suits and avoiding litigation in situations where only bad manners and mere hurt feelings are involved. Three, there was a causal connection between the wrongdoer's conduct and the emotional distress. Four, the emotional distress was severe.' " 169 W.Va. at 694–95, 289 S.E.2d at 704. (Citations omitted).

■ Again, there is a factual difference between *Harless* and the present case. In *Harless,* the plaintiff who claimed the emotional distress was the person directly subjected to the defendant's tortious conduct. However, both Section 46(2) of the *Restatement* and a majority of courts that have

addressed this question have concluded that a third person may recover emotional distress damages, if the direct victim of the defendant's outrageous conduct is a member of the third person's immediate family, and the third person witnessed the outrageous conduct.[4] *See, e.g., Foster v. Trentham's Inc.,* 458 F.Supp. 1382 (E.D.Tenn.1978) (applying Tennessee law); *Croft v. Wicker,* 737 P.2d 789 (Alaska 1987); *Rogers v. Williard,* 144 Ark. 587, 223 S.W. 15 (1920); *M.M. v. M.P.S.,* 556 So.2d 1140 (Fla.App.), *review denied,* 569 So.2d 1279 (Fla.1990); *H.L.O. v. Hossle,* 381 N.W.2d 641 (Iowa 1986); *Wiehe v. Kukal,* 225 Kan. 478, 592 P.2d 860 (1979); *Latremore v. Latremore,* 584 A.2d 626 (Me.1990); *Nancy P. v. D'Amato,* 401 Mass. 516, 517 N.E.2d 824 (1988); *Miller v. Cook,* 87 Mich.App. 6, 273 N.W.2d 567 (1978); *Star v. Rabello,* 97 Nev. 124, 625 P.2d 90 (1981); *Calliari v. Sugar,* 180 N.J.Super. 423, 435 A.2d 139 (1980); *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979).

The foregoing authorities generally agree that the following factors must be met for a person to recover for emotional distress caused by outrageous conduct inflicted by the defendant on the plaintiff's immediate family member: (1) the defendant's conduct was "extreme and outrageous"; (2) such conduct was directed at a third party; (3) the plaintiff is a member of the third person's immediate family; (4) the plaintiff was physically present when the extreme and outrageous conduct took place; (5) the plaintiff suffered severe emotional distress as a result of the conduct; and (6) if the emotional distress results in bodily injury, any person who was present at the time of the outrageous conduct may recover.

One of the more frequently litigated questions concerning the tort of intentional infliction of emotional distress is what type of misconduct will create a cognizable claim. In *Harless,* 169 W.Va. at 695, 289

**4.** Section 46(2) of the *Restatement* provides:

"Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress

(a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or
(b) to any other person who is present at the time, if such distress results in bodily harm."

S.E.2d at 704–05, we stated: "As comment (d) to Section 46 of the *Restatement* suggests, the conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.' "[5]

In several cases, we have determined as a matter of law that a defendant's conduct did not rise to the requisite level of outrageousness. In *Keyes v. Keyes*, 182 W.Va. 802, 392 S.E.2d 693 (1990), the decedent's brother and mother became involved in a bitter conflict with the decedent's son over the decedent's property shortly after his death. The son was neither listed in his father's funeral obituary nor allowed to ride with the family to the funeral. Finally, he was not permitted to erect the gravestone he had selected. He filed suit for outrageous conduct. We observed that the defendants' conduct was petty, mean-spirited, and a breach of etiquette, but refused to find that it amounted to outrageous conduct.

Likewise, in *Kanawha Valley Power Co. v. Justice*, 181 W.Va. 509, 383 S.E.2d 313 (1989), we dismissed the plaintiff's contention that he stated a claim for the tort of outrageous conduct against his employer. The plaintiff had received overpayments on his sick leave, which the defendant sought to collect. The plaintiff claimed that the defendant orally demanded payment from him. On another occasion, the employer told the plaintiff that they could discuss alternatives to his refusal to return the overpayments, which the plaintiff understood as a threat to terminate his employment. Finally, the plaintiff alleged that his supervisor treated him like a dog and other employees had implied that he was a thief. In rejecting his claim for intentional infliction of emotional distress, we explained:

"[A]s the *Restatement* further explains, liability may be imposed for outrageous conduct only where the distress that results is more than the 'transient' and 'trivial' distress that necessarily accompanies life among other people. 'The law intervenes only where the distress is so severe that no reasonable [person] could be expected to endure it.' *Restatement (Second) of Torts* § 46, comment j." 181 W.Va. at 513, 383 S.E.2d at 317.

We affirmed a summary judgment against the plaintiff in *Wayne County Bank v. Hodges*, 175 W.Va. 723, 338 S.E.2d 202 (1985). The plaintiff claimed that the bank committed the tort of outrageous conduct when it obtained an attachment on his property. The affidavit that was used to secure the attachment contained a false allegation, which later resulted in the court's quashing of the attachment. We found these facts barren of any outrageous conduct.

Finally, in *Yoho v. Triangle PWC, Inc.*, 175 W.Va. 556, 336 S.E.2d 204 (1985), an employee claimed that her employer committed outrageous conduct when it terminated her employment after she had been off work for more than one year because of a work-related injury. We agreed with the trial court that the claim was groundless.

Thus, conduct that is merely annoying, harmful of one's rights or expectations, uncivil, mean-spirited, or negligent does not constitute outrageous conduct.[6]

**5.** In note 20 of *Harless*, 169 W.Va. at 693, 289 S.E.2d at 703–04, we quoted from the text of Comment d. to Section 46 of the *Restatement*:

" 'd. *Extreme and outrageous conduct.* The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

**6.** We agree with the statement by the Kansas Supreme Court in *Wiehe v. Kukal, supra,* where the plaintiff saw her husband argue with a neighbor over a common boundary line. The neighbor cursed the husband and brandished a pitchfork at him. The court in *Wiehe*, 225 Kan. at 482–83, 592 P.2d at 864, stated:

"Disputes over boundary lines, over the cause of motor vehicle collisions, or over a

On the other hand, outrageous conduct can include physical violence that causes bodily harm and emotional distress.[7] Under Section 46 of the *Restatement,* the plaintiff in *Lambert v. Brewster* could have recovered for emotional distress even if she had not suffered a physical injury.[8]

■ Applying the rule permitting a close family member to recover damages for emotional distress arising from the outrageous conduct inflicted on another family member, we find that Patsy Jo's complaint does state a cause of action for intentional infliction of emotional distress. The complaint alleges that Patsy Jo, as a result of witnessing this conduct, has become emotionally disabled in his ability to communicate and socialize with his mother. Moreover, the plaintiffs assert that his emotional distress is so severe that he has had to seek psychiatric care.[9] Thus, when viewing the facts in the light most favorable to the plaintiff, we find that the trial court erred in dismissing Count III of the complaint.

### IV.

■ The trial court also dismissed the plaintiffs' cause of action against Denzil's mother, Maud Courtney. In the complaint, the plaintiffs assert that Maud was negligent when she gave Valium and alcohol to Denzil. They allege that she knew that he was a manic-depressive and that the alcohol and drugs would cause him to become violent and abusive. The plaintiffs do not assert that Maud's conduct is outrageous, but rather that liability can be imposed under negligence principles.

### A.

■ W.Va.Code, 55–7–9 (1923), expressly authorizes civil liability based on a violation of a statute.[10] Our case law has consistently recognized the mandates of W.Va. Code, 55–7–9, and in Syllabus Point 1 of *Anderson v. Moulder,* 183 W.Va. 77, 394 S.E.2d 61 (1990), we held:

> "Violation of a statute is *prima facie* evidence of negligence. In order to be actionable, such violation must be the proximate cause of the plaintiff's injury."

*See also Price v. Halstead,* 177 W.Va. 592, 355 S.E.2d 380 (1987); *Jenkins v. J.C. Penney Casualty Ins. Co.,* 167 W.Va. 597, 280 S.E.2d 252 (1981); *Vandergrift v. Johnson,* 157 W.Va. 958, 206 S.E.2d 515 (1974); *Kretzer v. Moses Pontiac Sales, Inc.,* 157 W.Va. 600, 201 S.E.2d 275 (1973); *Spurlin v. Nardo,* 145 W.Va. 408, 114 S.E.2d 913 (1960); *Flanagan v. Mott,* 145 W.Va. 220, 114 S.E.2d 331 (1960); *Somerville v. Dellosa,* 133 W.Va. 435, 56 S.E.2d 756 (1949).

In their complaint, the plaintiffs contend that Maud supplied Denzil with Valium. "Valium" is a brand name for the drug Diazepam,[11] which is listed as a Schedule IV controlled substance under W.Va.Code, 60A–2–210 (1987). Under the offense and

multitude of real or imagined wrongs, are likely to cause tempers to flare; words (vulgar and otherwise) to be uttered in anger; fists— or anything else handy—to be shaken; and assaults to occur. Such happenings are wholly unplanned, spur-of-the-moment occurrences; unfortunately, they occur all too frequently. But we cannot say that brief outbursts constitute 'extreme and outrageous' conduct."

**7.** *See, e.g., Lewis v. Lennox,* 567 So.2d 264 (Ala. 1990); *Cullison v. Medley,* 570 N.E.2d 27 (Ind. 1991); *Caron v. Caron,* 577 A.2d 1178 (1990); *Laurie Marie M. v. Jeffrey T.M.,* 159 A.D.2d 52, 559 N.Y.S.2d 336 (1990), *appeal denied,* 77 N.Y.2d 803, 568 N.Y.S.2d 15, 569 N.E.2d 874 (1991).

**8.** It appears that under Section 46(2)(b), *see* note 3, *supra,* any person, who witnesses the outrageous conduct against a third party, and

who suffers emotional distress that results in bodily harm may recover against the perpetrator for the emotional distress.

**9.** We reiterate our allegiance to Comment (j) of the *Restatement,* as we did in note 20 of *Harless, supra.* The emotional distress must have resulted from the event and be severe in nature.

**10.** W.Va.Code, 55–7–9, states: "Any person injured by the violation of any statute may recover from the offender such damages as he may sustain by reason of the violation, although a penalty or forfeiture for such violation be thereby imposed, unless the same be expressly mentioned to be in lieu of such damages."

**11.** In Dorland's Medical Dictionary 1689 (25th ed. 1974), this statement is made: "Valium— trademark for a preparation of diazepam."

penalty section for dealing in controlled substances, W.Va.Code, 60A-4-401(a), this language is found: "[It] is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver a controlled substance."

Thus, if, as the plaintiffs allege, Maud unlawfully delivered Valium to Denzil, then her actions would have violated W.Va. Code, 60A-4-401(a). However, that violation is actionable only if it is a proximate cause of the plaintiffs' injuries. Consequently, the plaintiffs must show that the Valium, in combination with Denzil's mental state and the alcohol, would make it foreseeable to an ordinary person knowing what Maud knew that he would become violent and abusive. The plaintiffs claim that he was abusive when intoxicated or after taking Valium and that Maud was aware of this behavior.

### B.

■ Even if Maud did not violate any statute, her alleged actions might still entitle the plaintiffs to the relief requested. In Syllabus Point 2 of *Robertson v. LeMaster*, 171 W.Va. 607, 301 S.E.2d 563 (1983), we adopted Section 321(1) of the *Restatement (Second) of Torts* (1965) [12]:

> "One who engages in affirmative conduct, and thereafter realizes or should realize that such conduct has created an unreasonable risk of harm to another, is under a duty to exercise reasonable care to prevent the threatened harm." [13]

*See also Overbaugh v. McCutcheon*, 183 W.Va. 386, 396 S.E.2d 153 (1990); *Price v. Halstead, supra; People v. Oliver*, 210 Cal.App.3d 138, 258 Cal.Rptr. 138 (1989).

In *Robertson*, the plaintiff was employed by the Norfolk & Western Railroad Company. On one occasion, the plaintiff was required to work for over twenty-four hours at physical labor without rest, despite his repeated requests that he be permitted to go home because he was tired. The employer finally allowed his employee to leave, but knew that he was driving alone to his home fifty miles away. On his way home, the employee fell asleep while driving and collided with another vehicle. The injured party sued both the employee and his employer. After the plaintiff had presented his case-in-chief, the trial court directed a verdict for the employer. On appeal, we reversed, because we were "unable to say as a matter of law that the appellee's conduct in requiring its employee to work such long hours and then setting him loose upon the highway in an obviously exhausted condition did not create a foreseeable risk of harm to others which the appellee had a duty to guard against." 171 W.Va. at 613, 301 S.E.2d at 569.

In *Price v. Halstead, supra,* we applied *Robertson*'s rule to passengers in a motor vehicle to find them jointly liable with the driver for a collision with another vehicle. The driver was intoxicated, and the passengers continued to supply him with beer and marijuana.

When applying Section 321 of the *Restatement* to the facts of this case, we find that the trial court erred in dismissing Count II. The complaint charged that Maud gave Valium and alcohol to Denzil although she knew that he had violent tendencies when using these drugs. The plaintiffs also allege that Maud knew Denzil was abusive to them. Under these circumstances, Maud could have foreseen that supplying Valium and alcohol would create an unreasonable risk of physical harm to

---

**12.** Rule 321(1) of the *Restatement* provides: "If the actor does an act, and subsequently realizes or should realize that it has created an unreasonable risk of causing physical harm to another, he is under a duty to exercise reasonable care to prevent the risk from taking effect."

**13.** In *Robertson,* we did not discuss Section 321(2) of the *Restatement,* which states: "The rule stated in Subsection (1) applies even though at the time of the act the actor has no reason to believe that it will involve such a risk." This rule comes into play when the actor, after doing an act which appears harmless at the time, subsequently realizes that an unreasonable risk has been created. At this point, the duty to exercise reasonable care arises. Illustration 1 under the commentary to Section 321 gives the example of a golfer who hits his ball toward the green when no one was visible around it. Suddenly, a player emerges from a bunker and in the ball's line of flight. The golfer then has a duty to give a warning.

the plaintiffs. She had a duty to act reasonably by not giving him alcohol and drugs.

## C.

█ In *Price v. Halstead, supra,* we also recognized the rule found in Section 876(b) of the *Restatement (Second) of Torts* (1979): " 'For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he ... (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself.' " 177 W.Va. at 597, 355 S.E.2d at 386. We applied it to affix liability on the passengers in a motor vehicle who had encouraged the driver's negligent operation of the vehicle. The driver was already visibly intoxicated, yet the passengers continued to encourage him to drink and smoke marijuana. Ultimately, he lost control of his vehicle, crossed the centerline, and collided with an oncoming vehicle. The driver of that vehicle was killed, and its passengers were seriously injured. We expressed this rule in Syllabus Point 12 of *Price:*

> "A passenger may be found liable for injuries to a third party caused by the intoxication of the driver of the vehicle in which he is riding, if the following conditions are met: (1) the driver was operating his vehicle under the influence of alcohol or drugs which proximately caused the accident resulting in the third party's injuries, and (2) the passenger's conduct substantially encouraged or assisted the driver's alcohol or drug impairment."

Other courts have arrived at this same conclusion under Section 876(b) accomplice liability. *See Cobb v. Indian Springs, Inc.,* 258 Ark. 9, 522 S.W.2d 383 (1975);

*Smith v. Thompson,* 103 Idaho 909, 655 P.2d 116 (1982); *Sanke v. Bechina,* 216 Ill.App.3d 962, 160 Ill.Dec. 258, 576 N.E.2d 1212 (1991); *Aebischer v. Reidt,* 74 Or.App. 692, 704 P.2d 531, *review denied,* 300 Or. 332, 710 P.2d 147 (1985).

█ Comment d. to Section 876(b) of the *Restatement* identifies six criteria to use when determining whether a person shall be liable for assisting or encouraging a tort.[14] The Third Circuit Court of Appeals in *Fassett v. Delta Kappa Epsilon,* 807 F.2d 1150, 1163 (3d Cir.1986), *cert. denied,* 481 U.S. 1070, 107 S.Ct. 2463, 95 L.Ed.2d 872 (1987), summarized them in this fashion:

"a. the nature of the act encouraged;

"b. the amount of assistance given by the defendant;

"c. the defendant's presence or absence at the time of the tort;

"d. the defendant's relation to the other tortfeasor;

"e. the defendant's state of mind; and

"f. the foreseeability of the harm that occurred."

We adopt these factors, but conclude that they are not necessarily exhaustive.

In this case, we are unable to determine whether the plaintiffs can establish liability under this theory because the facts are not sufficiently developed. We do believe that the complaint states a claim for accomplice liability, and the plaintiffs should be able through discovery to develop facts to support the claim. Consequently, we find the circuit court erred in granting the motion to dismiss Count II.

## V.

█ In closing, we address a matter of public policy not raised by the parties.

---

**14.** Comment d. of the *Restatement,* in relevant part, provides:

"The assistance of or participation by the defendant may be so slight that he is not liable for the act of the other. In determining this, the nature of the act encouraged, the amount of assistance given by the defendant, his presence or absence at the time of the tort, his relation to the other and his state of mind are all considered. ... Likewise, although a person who encourages another to commit a tortious act may be responsible for other acts by the other ..., ordinarily he is not liable for other acts that, although done in connection with the intended tortious act, were not foreseeable by him.... In determining liability, the factors are the same as those used in determining the existence of legal causation when there has been negligence ... or recklessness."

With regard to a wife's ability to sue her husband for physical abuse or outrageous conduct which leads to emotional distress, we abolished the doctrine of interspousal immunity in the Syllabus of *Coffindaffer v. Coffindaffer*, 161 W.Va. 557, 244 S.E.2d 338 (1978):

"Under the provisions of W.Va.Code, 48–3–19, the defense of interspousal immunity is not available in suits between spouses in this State."

We went on to make this statement in *Coffindaffer:*

"Of significance is the right to recover for the intentional tort. Our law before today practiced a cruel paradox. Under the guise of promoting family harmony, it permitted the wife beater to practice his twisted frustrations secure in the knowledge that he was immune from civil action except for a divorce, and that any criminal penalty would ordinarily be a modest fine. If nothing else, the knowledge of a monetary judgment with punitive damages may stay such violence." 161 W.Va. at 567, 244 S.E.2d at 343–44.

A majority of courts in other jurisdictions have also abolished the common law doctrine of interspousal tort immunity. *See* Annot., 92 A.L.R.3d 901 (1979).

■ With regard to a child's right to recover damages for intentional torts inflicted by a parent, we have not had occasion to address this precise issue. In *Lee v. Comer*, 159 W.Va. 585, 224 S.E.2d 721 (1976), we abolished the doctrine of parental immunity where a child had been injured in an automobile accident while riding as a passenger in a car owned by her father. This was based on a line of cases recognizing that in most instances, there was automobile liability insurance coverage. Consequently, there would be no real disruption of family harmony. We summarized our holding in Syllabus Point 2 of *Lee v. Comer:*

"An unemancipated minor may maintain an action against his parent for personal injuries sustained in a motor vehicle accident caused by the negligence of said parent and to that extent the parental immunity doctrine is abrogated in this jurisdiction."

In the course of discussing some of the cases from other jurisdictions that had made exceptions to the common law doctrine of parental immunity, this statement was made, which found its way into Syllabus Point 1 of *Lee v. Comer:*

"Unemancipated minors enjoy the same right to protection and to legal redress for wrongs done them as others enjoy."

This syllabus point was recently cited in *Belcher v. Goins*, 184 W.Va. 395, 400 S.E.2d 830 (1990), which might be read to suggest that we have totally abrogated the doctrine of parental immunity. *Belcher* summarizes the holding of *Lee v. Comer* as "abrogating parental immunity doctrine, thereby permitting an unemancipated minor child to maintain a negligence action against his or her parent." 184 W.Va. at 406, 400 S.E.2d at 841. (Parentheses omitted). However, *Belcher* did not deal with parental immunity. Its issue was whether a minor child could sue a tortfeasor, who had caused substantial injuries to the child's parent, on the basis that the child had suffered loss of parental consortium.

■ As we have pointed out, the abrogation of parental immunity discussed in *Lee v. Comer, supra,* was confined to automobile accidents. It would appear that most courts have not totally abolished the doctrine of parental immunity for negligent injuries inflicted by a parent upon a child. Rather, they have subjected the doctrine to various exceptions, as we did in *Lee v. Comer.*[15] We need not analyze the contours of this area of the law because we deal with an intentional tort. Where a parent inflicts an injury on a child through intentional or wilful conduct, courts are more in harmony, as illustrated by this statement from the annotation found in 19 A.L.R.2d 423, 451 (1951):

"The strong modern inclination which accords with certain of the older rulings ... is to regard the minor's damage ac-

---

**15.** *See generally* Annot., 6 A.L.R. 4th 1066 (1981 & Supp.1991).

tion against parents or persons in loco parentis as maintainable where the injury or death was intentional or resulted from wilful misconduct or an evil mind, ... whether or not characterized as malice." [16]

We intimated in *Securo v. Securo*, 110 W.Va. 1, 156 S.E. 750 (1931), that we might adopt this rule were an appropriate case before us. In *Securo*, the child had been injured in an automobile accident as a passenger in her father's car. She sued him for her injuries alleging that he was negligent. We recognized that parental immunity precluded a negligence action; [17] however, we concluded the case with this statement:

"But whether the rule should be carried to the extent, as some of the cases have done, of denying an infant the right to maintain an action for damages against his parent for injury inflicted with evil intention and from wicked motives, is a question not now before us, but remains for consideration if such unfortunate situation should arise." 110 W.Va. at 2, 156 S.E. at 751.

The New Jersey Supreme Court in *Foldi v. Jefferies*, 93 N.J. 533, 461 A.2d 1145 (1983), noted that its child abuse and neglect laws did not fully protect children from the wilful, wanton, and intentional acts of their parents. We echo the same statement as to our child neglect and abuse statute. W.Va.Code, 49–6–1, *et seq.* It is primarily designed to enable the child to be removed from the home.

Courts have recognized that not every physical touching of a child will result in liability. Parents are able to discipline their children by administering reasonable physical punishment. However, when such punishment becomes excessive and results in substantial traumatic injury to the child, liability arises. Several courts have quoted this language from the California Supreme Court in *Emery v. Emery*, 45 Cal.2d 421, 429–30, 289 P.2d 218, 224 (1955):

"Since the law imposes on the parent a duty to rear and discipline his child and confers the right to prescribe a course of reasonable conduct for its development, the parent has a wide discretion in the performance of his parental functions, but that discretion does not include the right wilfully to inflict personal injuries beyond the limits of reasonable parental discipline. No sound public policy would be subserved by extending it beyond those limits. While it may seem repugnant to allow a minor to sue his parent, we think it more repugnant to leave a minor child without redress for the damage he has suffered by reason of his parent's wilful or malicious misconduct. A child, like every other individual, has a right to freedom from such injury."

*See Attwood v. Attwood's Estate*, 276 Ark. 230, 633 S.W.2d 366 (1982); *Rodebaugh v. Grand Trunk W.R.R. Co.*, 4 Mich.App. 559, 145 N.W.2d 401 (1966).

Thus, the general rule is that parental immunity is abrogated where the parent causes injury or death to his or her child from intentional or wilful conduct, but liability does not arise from reasonable corporal punishment for disciplinary purposes. In this case, if the plaintiffs can show that Denzil's conduct falls within the above rule, then parental immunity will not bar their action for physical abuse and emotional distress arising therefrom.

### VI.

Finally, we take no view as to the ultimate liability in this case. All we do say is

---

**16.** *See, e.g., Emery v. Emery*, 45 Cal.2d 421, 289 P.2d 218 (1955); *Wright v. Wright*, 85 Ga.App. 721, 70 S.E.2d 152 (1952); *Edgington v. Edgington*, 193 Ill.App.3d 104, 140 Ill.Dec. 291, 549 N.E.2d 942, *appeal denied*, 131 Ill.2d 558, 142 Ill.Dec. 881, 553 N.E.2d 395 (1990); *Mancinelli v. Crosby*, 247 N.J.Super. 456, 589 A.2d 664 (1991); *Lee v. Mowett Sales Co.*, 316 N.C. 489, 342 S.E.2d 882 (1986); *Briere v. Briere*, 107 N.H. 432, 224 A.2d 588 (1966); *Hartford Accident & Indem. Co. v. Borchers*, 3 Ohio App.3d 452, 445

N.E.2d 1160 (1982); *Sixkiller v. Summers*, 680 P.2d 360 (Okla.1984); *Talarico v. Foremost Ins. Co.*, 105 Wash.2d 114, 712 P.2d 294 (1986). *See generally* 59 Am.Jur.2d *Parent and Child* § 148 (1987).

**17.** *Securo's* holding that parental immunity precludes an action for negligent injuries arising out of an automobile accident has, of course, been overruled by *Lee v. Comer, supra.*

that from the facts alleged and the reasonable inferences that may be drawn, Counts II and III of the plaintiffs' complaint were not subject to a motion to dismiss.

For the foregoing reasons, the judgment of the Circuit Court of Taylor County is reversed, and this case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.