**Leonard Dallas SETTLE, Plaintiff,**

v.

**Dianna Lynn SETTLE, Defendant.**

**Civ. A. No. 5:92–0993.**

United States District Court,
S.D. West Virginia,
at Beckley.

July 28, 1994.

---

Wade H. Ballard, III, Peterstown, WV, for plaintiff.

F. Alfred Sines, Jr., Charleston, WV, for defendant.

### *MEMORANDUM OPINION AND ORDER*

HALLANAN, District Judge.

This matter is before the Court via Defendant Dianna Lynn Settle's motion for summary judgment, Plaintiff Leonard Dallas Settle's motion in opposition, and Defendant's response to Plaintiff's motion in opposition. The Court, after carefully considering said motions and memoranda in support thereof, is prepared to render its decision.

### I.

### A.

Plaintiff Leonard Dallas Settle ("Plaintiff") and Defendant Dianna Lynn Settle ("Defendant"), now divorced, were once husband and wife and had two children. Plaintiff instituted this action against Defendant, as custodian of their two children, alleging Defendant has inflicted severe emotional harm upon him by preventing him from visiting his children

after the divorce. (Complaint, p. 3). Plaintiff states in his complaint that his marriage to the Defendant ended by a final divorce decree entered in the Circuit Court of Fayette County, West Virginia, on or about March 17, 1987. After the divorce, Defendant and her infant children relocated in the State of Florida. (Memorandum of Law in Support of Motion for Summary Judgment, p. 1) (hereinafter "Memo in Support of Summ. J."). While residing in the State of Florida, Defendant abided by the final divorce decree from Fayette County and permitted Plaintiff to have summer visitation with his children. *Id.* Plaintiff refused, however, at the end of each of the summer periods of visitation, to return the children to Florida and filed petitions to modify the custody award. *Id.* at 2. The petitions, filed by Plaintiff in Fayette County, and Defendant's necessitated attempts to retrieve her children caused several hearings to be held in West Virginia. As a result of Plaintiff's actions, Defendant sought legal advice in the State of Florida. Determining that she qualified under the Uniform Child Custody and Jurisdiction Act (commonly referred to as the UCCJA), Defendant sought relief in the Circuit Court of the Twentieth Judicial Circuit in and for Lee County, Florida. *Id.* The relief Defendant obtained was a requirement that Plaintiff post a bond to secure the return of the children to Florida at the end of the summer visitation periods as required in the original divorce decree. *Id.*

As a result of the emotional distress allegedly caused by Defendant preventing him from visiting with his children, Plaintiff claims he has become disabled and unable to work as a coal miner and has had to seek psychiatric treatment for his depression. Ultimately, Plaintiff demands judgment in the amount of $250,000.00 in compensatory damages and $750,000.00 in punitive damages. (Complaint, p. 4).

Defendant has filed a motion for summary judgment in this matter claiming that Plaintiff's claim must fail for the following reasons: first, Plaintiff has failed to state a claim upon which relief can be granted due to the fact that Defendant has acted and relied upon subsequent lawful court orders from the Circuit Court of the Twentieth Judicial Circuit in Lee County, Florida; second, Plaintiff has failed to state a claim upon which relief can be granted due to the fact that the visitation rights of Plaintiff regarding the two children were established by the Lee County Court under sections of Florida statutes which are modelled after the Uniform Child Custody Jurisdiction Act (UCCJA); third, Defendant claims that Plaintiff's version of the facts as he stated them in the Complaint are incomplete, inaccurate and are an attempt to defraud this Court of the exact nature of the status of the parties and the legal rights which now exist by way of court orders; and fourth, Defendant asserts that she has engaged in no wrongful conduct and has violated no duty imposed upon her by operation of law so as to give rise to a tort action of the kind instituted by Plaintiff. (Motion for Summary Judgment Pursuant to FRCP 56, pp. 1–4) (hereinafter "Motion Summ. J.").

Attached to Defendant's motion for summary judgment are copies of court orders. On April 25, 1991, a judge in the Twentieth Judicial Circuit in Lee County, Florida, ordered and adjudged that the Twentieth Judicial Circuit of Lee County has jurisdiction of the parties and the West Virginia Decrees were established as Florida judgments. That order also required the former husband (Plaintiff) to post a $5,000.00 cash bond before exercising his visitation rights with the children outside the presence of Defendant. Thus, Defendant is asserting that her conduct was at all times in compliance with the law and in no way infringed upon the legal rights of Plaintiff. Because she did not violate any law or right of the Plaintiff, Defendant argues that Plaintiff has failed to show that she engaged in conduct which would give rise to a cause of action for intentional infliction of emotional distress.

In opposing Defendant's motion for summary judgment, Plaintiff does not claim that the Order from Lee County Circuit Court is invalid, nor does he claim that Defendant violated the Fayette County, West Virginia court's divorce and custody decree. Instead, Plaintiff states that "[t]his is not an action for the custody of children. It is an action

against the custodial parent for wilfully impeding and obstructing the plaintiff's right to enjoy the company of his children." (Motion in Opposition to Defendant's Rule 56 Motion for Summary Judgment, p. 2) (hereinafter "Motion in Opposition"). Plaintiff alleges that the conduct of Defendant "is wrongful because as a practical matter it precluded the plaintiff from enjoying the love, attention and company of his children which was not only a natural and inherent right, but a right accorded to him by the Courts." *Id.*

To support his claim of intentional infliction of emotional distress, Plaintiff alleges that Defendant, by requiring Plaintiff to post a bond that she "knew he full well could not post, ... [has] vividly demonstrat[ed] ... contemptuous, wrongful, intentional infliction of emotional harm." *Id.* Furthermore, Plaintiff states that "[t]he defendant owed the plaintiff the simple, decent legal duty of accommodating and facilitating his precious, God-given right to the company of his children[.]" *Id.*

After alleging such behavior on the part of Defendant, Plaintiff stated that he "acknowledges that the defendant had the legal right to the custody of the children because of a final divorce decree in the Circuit Court of Fayette County, West Virginia." He also stated that "defendant's election to move to Florida may be her right, however, surely she has no legal right to engage in conduct which obstructs and for all practical purposes prevents the plaintiff from visiting his children when she knows full well it is most injurous [*sic* ] to the father and certainly not in the best interest of the children." (Motion in Opposition, p. 4). Consequently, Plaintiff claims that there is a causal connection between Defendant's actions and the severe depression he alleges he has endured and that Defendant intended to inflict emotional harm upon him. *Id.*

## B.

The Supreme Court of Appeals of West Virginia first defined the tort of outrage or intentional infliction of emotional distress in *Harless v. First National Bank in Fair-*

*mont,* 169 W.Va. 673, 289 S.E.2d 692, 703 (1982):

> One who by extreme or outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for bodily harm.

Because this definition is patterned after the definition found in Section 46 of the Restatement (Second) of Torts, the West Virginia Court also looks to the Restatement for explanations as to the type of behavior which constitutes "extreme or outrageous conduct." *See Dzinglski v. Weirton Steel Corp.,* 445 S.E.2d 219 (W.Va.1994). Comment d of the Restatement, entitled "extreme and outrageous conduct" states the following:

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."

*Harless,* 289 S.E.2d at 703–04 (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d).

The contours of a cause of action for the intentional infliction of emotional distress were also examined in *Harless:*

> [A] cause of action will lie for emotional distress, unaccompanied by physical injury, provided four elements are shown: One, the wrongdoer's conduct was intentional or reckless. This element is satisfied where the wrongdoer had the specific purpose of inflicting emotional distress or where he intended his specific conduct and knew or should have known that emotional distress would likely result. Two, the conduct was outrageous and intolerable in that it offends against the generally accepted

standards of decency and morality. This requirement is aimed at limiting frivolous suits and avoiding litigation where only bad manners and mere hurt feelings are involved. Three, there was a causal connection between the wrongdoer's conduct and the emotional distress. Four, the emotional distress was severe.

*Harless,* 289 S.E.2d at 704 (quoting *Womack v. Eldridge,* 215 Va. 338, 210 S.E.2d 145, 148 (1974)); *see* also *Courtney infra,* 413 S.E.2d at 422.

Further explanation was delivered in another West Virginia case wherein the plaintiffs, a mother and her son, sued the defendants, the mother's ex-husband and the son's father, along with the ex-husband's mother, for intentional infliction of emotional distress. *Courtney v. Courtney,* 186 W.Va. 597, 413 S.E.2d 418 (1991). The court in *Courtney* was faced with the question of what type of misconduct will create a cognizable claim of intentional infliction of emotional distress. *Id.,* 413 S.E.2d at 422. In answering this question, the West Virginia Court found that conduct which is "petty, mean-spirited, and a breach of etiquette" or "merely annoying, harmful of one's rights or expectations, uncivil, mean-spirited, or negligent" will not amount to outrageous conduct. *Id.,* 413 S.E.2d at 423. In *Courtney,* the ultimate issue of liability was not determined since the court was reviewing a motion to dismiss.

In the recent case of *Dzinglski supra,* the West Virginia Court held that a defendant can possess a qualified privilege which may serve as a defense to a claim of intentional infliction of emotional distress. The Restatement, in comment g to Section 46, explains when this privilege may come into play:

[C]onduct, although it would otherwise be extreme and outrageous, may be privileged under the circumstances. The actor is never liable, for example, where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such instance is certain to cause emotional distress.

*Dzinglski,* 445 S.E.2d at 221 (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. g). In that case, the plaintiff was an employee who alleged his employer's publication of investigation results into the employee's alleged misconduct was outrageous conduct. The court found the defendant employer was protected by the qualified privilege and that it acted only to protect and advance its own interests. Because the communications concerning the investigation did not proceed beyond the scope of that privilege, the defendant was found not guilty of outrageous conduct. *Dzinglski,* 445 S.E.2d at 227–28.

## II.

### A.

The Court begins its analysis by noting that the United States Supreme Court has held that

the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

Courts must be careful, however, to insure that in assessing a motion for summary judgment all justifiable inferences are drawn in favor of the nonmoving party for "[c]redibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge". *Anderson v. Liberty. Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Moreover, courts "must perform a dual inquiry into the *genuineness* and *materiality* of any purported factual issues." *Ross v. Communications*

*Satellite Corp.,* 759 F.2d 355, 364 (4th Cir. 1985). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. While "[g]enuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." *Ross,* 759 F.2d at 364; *accord Goldberg v. B. Green & Co., Inc.,* 836 F.2d 845, 848 (4th Cir.1988); *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987); *Ash v. United Parcel Service,* 800 F.2d 409, 411–12 (4th Cir.1986).

▌ After thoroughly reviewing the record in light of these principles,

[t]he judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmovant] on the evidence presented. The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant].

*Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512. Where such analysis reveals the absence of any genuine issues of material fact, the non-moving party should be cognizant of "the affirmative obligation of the trial judge to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty,* 818 F.2d at 1128 (quoting *Celotex Corp.,* 477 U.S. at 323–24, 106 S.Ct. at 2553).

**B.**

▌ Having stated the applicable law and requirements for a claim of intentional infliction of emotional distress, this Court now addresses the merits of Plaintiff's claim and whether Defendant's motion for summary judgment should be granted.

What Plaintiff is asking this Court to do is to punish Defendant for exercising her legal rights. The tort of intentional infliction of emotional distress is, obviously, an intentional tort. Nevertheless, Plaintiff has put forth no evidence tending to show that Defendant acted in such a way as to intend to inflict emotional distress upon Plaintiff. In fact, in light of the failure of Plaintiff to explain or refute Defendant's assertion that Plaintiff refused to return the children to their mother after summer visits, Defendant's actions can be viewed as rational and somewhat beneficial to Plaintiff. If Plaintiff, by refusing to return the children to Florida, was in fact violating a custody order, Defendant may have very well been able to prevent Plaintiff from enjoying *any* visitation. As it stands, however, Defendant took only those measures necessary to ensure the return of the children. Moreover, Defendant has responded to all of Plaintiff's allegations of wrongdoing with evidence of court orders showing her conduct to be in compliance with the law. As such, Plaintiff has presented no genuine or material facts tending to show Defendant's actions were extreme, outrageous or utterly intolerable.

If in fact Defendant's sole purpose for moving the children to Florida and requiring Plaintiff to post a bond before enjoying his visitation rights was to inflict emotional distress upon Plaintiff, which has not been established, her conduct still would not rise to the level of outrageousness sufficient to sustain a cause of action. Such behavior may well be considered "mean-spirited" or "harmful of one's rights or expectations," but it is not conduct so "outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *See Harless, supra.*

Plaintiff also alleges that "[t]he defendant owed the plaintiff the simple, decent legal duty of accommodating and facilitating his precious, God-given right to the company of his children[.]" (Motion in Opposition, p. 2). The definition and/or significance of a "simple, decent legal duty" is unknown. Nevertheless, Plaintiff alleges Defendant breached this duty but neglects to submit any evidence substantiating such a claim.

It is most obvious that Plaintiff is distraught over the fact that his children are geographically separated from him. This is

understandable. At the same time, however, Plaintiff has failed to point to specific acts which support the essential elements of his cause of action.

This Court empathizes with Plaintiff to the extent that it recognizes the emotions, quite often painful, which surround domestic matters. This is especially true when children are involved. This type of case, however, is not the solution to such problems. For example, the following passage from Plaintiff's memorandum of law supporting his motion in opposition to summary judgment shows how Plaintiff has failed to provide a basis for his claim of intentional infliction of emotional distress:

> The defendant who had legal custody of the children by virtue of a divorce decree in the Circuit Court of Fayette County, West Virginia, removed the children to the State of Florida. She did not obtain a court order permitting her to do so.
>
> While she was in the State of Florida she obtained a court order from a Circuit Court in Lee County, Florida, which required Leonard Dallas Settle to post a five thousand dollar cash bond before he could exercise his visitation privileges.

If Plaintiff is being deprived of a legal right to visitation with his children or if Defendant is in violation of a court order, which is what this Court infers Plaintiff is alleging, then his course of action should be one focussed on the custody decree and enforcement of its provisions. The evidence submitted by Defendant, however, shows the various court orders to be in compliance with the law and indicate only that Defendant has acted lawfully and within her rights as a custodial parent. In fact, Defendant submitted a receipt from the Fayette County Circuit Court Clerk evidencing a bond posted on June 15, 1994, in the amount of $5,000.00. (Defendant's Response To Plaintiff's Motion in Opposition, p. 2). Yet, in Plaintiff's complaint and subsequent filings, he claims that Defendant required him to post such a bond with the knowledge that Plaintiff was unable to do so, thus constituting extreme and outrageous behavior. Plaintiff also made the allegation that Defendant prevented Plaintiff from speaking with his son by telephone. (Memo in Opposition, p. 2). Plaintiff has failed, however, to produce his telephone bills which were requested by Defendant through discovery. (Defendant's Response To Plaintiff's Motion in Opposition, p. 4).

Despite the above-mentioned facts, established through the memoranda and exhibits supporting Defendant's motion for summary judgment, which clearly refute wrongdoing on the part of Defendant, Plaintiff has chosen to institute this action for monetary damages due to the emotional distress he alleges he has endured as a result of the battles between him and his ex-wife over the custody and visitation rights of their two children. The very nature of this case is most disturbing. Nonetheless, the issue of whether Defendant has acted in such a way that is in the children's best interest by moving them away from their father is not before this Court. The issue of whether Defendant needed to obtain a court order, as Plaintiff suggests, to move the children to Florida is also not before this Court. What is before this Court are Plaintiff's allegations that these acts constitute extreme and outrageous conduct by Defendant which have caused him to suffer emotional distress. Having thoroughly reviewed the evidence submitted by both parties, it is the determination of this court that Plaintiff has failed to create a genuine issue of material fact with regard to Defendant's behavior. Moreover, Plaintiff has failed to put forth any evidence regarding the emotional distress he claims to have endured other than his factually unsupported allegations that he has suffered severe depression as a result of Defendant's conduct.

For the foregoing reasons, IT IS ORDERED that Defendant's motion for summary judgment be granted and judgment ENTERED in favor of Defendant and against Plaintiff.

The Clerk is directed to remove this matter from the docket and to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.