PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

MARY LOU SMITH; GREG SMITH,
          *Plaintiffs-Appellants,*

v.                                        No. 06-1801

HONORABLE ANDREW N. FRYE, JR.,
          *Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of West Virginia, at Elkins.
David A. Faber, Chief District Judge.
(2:06-cv-00014-DAF)

Argued: March 12, 2007

Decided: May 18, 2007

Before NIEMEYER, MOTZ, and DUNCAN, Circuit Judges.

Affirmed by published opinion. Judge Duncan wrote the opinion, in which Judge Niemeyer concurred. Judge Motz wrote a separate opinion concurring in part and concurring in the judgment.

## COUNSEL

**ARGUED:** Allan Norman Karlin, Morgantown, West Virginia, for Appellants. John M. Hedges, BYRNE, HEDGES & LYONS, Morgantown, West Virginia, for Appellee. **ON BRIEF:** Teresa J. Lyons, BYRNE, HEDGES & LYONS, Morgantown, West Virginia, for Appellee.

**OPINION**

DUNCAN, Circuit Judge:

Appellants Mary Lou Smith ("Ms. Smith") and her son, Greg Smith ("Mr. Smith"), appeal the district court's dismissal of their suit against Judge Andrew N. Frye, Jr. ("Judge Frye"), Chief Circuit Judge for the Twenty-First Judicial Circuit in West Virginia. Judge Frye discharged Ms. Smith from her at-will employment as a magistrate court clerk after Mr. Smith filed as a candidate for the position of circuit clerk against the incumbent, Ms. Smith's colleague. Appellants brought this action under 42 U.S.C. § 1983, alleging a violation of their First Amendment rights.

Judge Frye moved to dismiss the complaint based upon failure to state a claim and the defense of qualified immunity. Judge Frye further contended that Mr. Smith lacked standing. The district court dismissed the complaint, concluding that Ms. Smith had failed to state a claim because she did not exercise any First Amendment rights prior to her discharge and that Mr. Smith's claims failed for want of standing.

We hold that Ms. Smith has failed to state a claim that her firing violated her First Amendment speech or associational rights and also hold that Mr. Smith lacks standing. We therefore affirm.

I.

Ms. Smith was hired as the Clerk of the Magistrate Court of Mineral County, West Virginia in November 2002. The Clerk of the Magistrate Court serves at the will and pleasure of the Chief Judge of the Twenty-First Judicial Circuit of West Virginia. Two circuit judges for the Twenty-First Judicial Circuit, Judge Philip B. Jordan, Jr. and Judge Andrew N. Frye, Jr., take turns serving as Chief Judge based on a regular two-year rotation. When Ms. Smith was first hired, Judge Jordan was serving as Chief Judge. On January 1, 2003, Judge Frye assumed the role. From the time of her hiring, Ms. Smith apparently performed her job adequately, receiving no complaints about her performance.

On January 30, 2004, Ms. Smith's adult son, Mr. Smith, filed to run for the office of Mineral County Circuit Clerk. At that time, the office was held by an incumbent Republican whom Mr. Smith would challenge in the Republican primary. Several days later, Judge Frye told Judge Jordan that he intended to fire Ms. Smith because of her son's candidacy. Judge Frye expressed concerns over potential conflicts of interest and the proper functioning of the local judicial system created by the combination of Ms. Smith's employment and her son's candidacy. Judge Frye terminated Ms. Smith's employment on February 5, 2004.

The personnel policies and procedures governing the West Virginia judicial system, as promulgated by the West Virginia Supreme Court of Appeals, grant an employee dismissed without cause a post-dismissal hearing to determine if the dismissal was actually due to reasons impermissible under federal or state law. *See* Sections 6.2(E),(G) of the West Virginia Judicial Personnel System Manual (effective Jan. 1990, and as subsequently amended), at J.A. 32-33. In such cases, the Administrative Director of the Supreme Court of Appeals or his designee appoints a hearing examiner, who in turn takes evidence, makes findings, and submits such findings and recommendations back to the Administrative Director. The Administrative Director must then affirm or reverse the hearing examiner's report. If the Administrative Director finds against the employee, the employee may request an administrative review by the Supreme Court of Appeals, which may grant or deny the request, or uphold or reject the dismissal. Any decision by the Supreme Court of Appeals is final.

In this case, Ms. Smith exhausted the administrative review available to her. The hearing examiner found that Ms. Smith "would not have been discharged had her son not become a candidate for circuit clerk, but that her discharge did not violate state or federal law." *Smith v. Frye*, No. 2:06-CV-14, 2006 U.S. Dist. LEXIS 39909, at *4 (N.D. W. Va. June 14, 2006). The designee of the Administrative Director affirmed the examiner's report, and the Supreme Court of Appeals denied Ms. Smith administrative review.

After exhausting Ms. Smith's administrative review, both she and Mr. Smith filed suit in federal court alleging that Judge Frye violated their First Amendment rights. The Smiths allege that Judge Frye fired

Ms. Smith because he believed that Ms. Smith supported her son's candidacy, and not that of the incumbent circuit clerk. Although the Smiths' allegations have been both vague and evolving, they do *not* allege that Ms. Smith demonstrated her support through expressive activity or through association. Judge Frye brought a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss Ms. Smith's claim, and a motion to dismiss Mr. Smith's claim for lack of standing. The district court granted both motions, and we now review the Smiths' appeals from the district court's decisions on each in turn.

## II.

We first address Ms. Smith's claims that the district court erred in dismissing her claims under Rule 12(b)(6). We review de novo a district court's dismissal under Rule 12(b)(6), *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993), and accept all allegations in Ms. Smith's complaint as true, *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Therefore, we assume that Judge Frye fired Ms. Smith because he believed she supported Mr. Smith's candidacy in the race for circuit clerk.

## A.

Ms. Smith argues that the district court erred in relying upon cases involving allegedly retaliatory actions taken against public employees based on the content of their speech rather than on cases addressing public employees' associational rights. Indeed, the district court concluded that because Ms. Smith does not allege she said or did anything in support of her son's candidacy (i.e., she does not allege she exercised First Amendment rights) that her claim failed as a matter of law. In reaching this result, the district court applied the so-called *McVey* test, our circuit's three-prong test to determine if a retaliatory employment action violates an employee's First Amendment rights. *See Ridpath v. Bd. of Governors of Marshall Univ.*, 447 F.3d 292, 316 (4th Cir. 2006); *McVey v. Stacy*, 157 F.3d 271, 277-78 (4th Cir. 1998).

> First, the public employee must have spoken as a citizen, not as an employee, on a matter of public concern. Second, the employee's interest in the expression at issue must have out-

weighed the employer's interest in providing effective and efficient services to the public. Third, there must have been a sufficient causal nexus between the protected speech and the retaliatory employment action.

*Ridpath*, 447 F.3d at 316 (internal citations and quotations omitted). Because the first prong of the *McVey* test requires that the "public employee . . . have spoken out as a citizen . . . on a matter of public concern," *id.*, the district court found Ms. Smith's claim failed because she had not spoken or expressed herself in any way. We find no error in the district court's analysis on this issue,[1] but we agree with Ms. Smith that we must also review the claim that her firing violated her First Amendment associational rights. We consider that claim below.

## B.

Ms. Smith argues that her termination violated the First Amendment even in the absence of the exercise of First Amendment speech rights, relying upon the Supreme Court's decisions in *Elrod v. Burns*, 427 U.S. 347 (1976), and *Branti v. Finkel*, 445 U.S. 507 (1980), and their progeny. She asserts that Judge Frye's dismissing her from her at-will post as magistrate clerk because he believed she supported her

---

[1]Furthermore, Ms. Smith cannot make a *McVey* claim based on perceived or expected speech. That is, she cannot rest a First Amendment retaliation claim on speech Judge Frye perceived she would engage in if not terminated. The second prong of the *McVey* test requires that "the employee's interest in the expression at issue . . . outweigh[ ] the employer's interest in providing effective and efficient services to the public," *Ridpath*, 447 F.3d at 316 (internal quotations omitted). In two recent opinions dealing with the free speech of public employees, the Supreme Court has underscored the government's interest in this balancing test. *See Garcetti v. Ceballos*, 126 S. Ct. 1951, 1958, 1960-62 (2006) ("A government entity has broader discretion to restrict speech when it acts in its role as employer . . . ."); *Waters v. Churchill*, 511 U.S. 661, 671-74 (1994). Given the government-as-employer's interests in regulating workplace behavior, including speech in some instances, recognizing a cause of action for employees based on speech not yet spoken would seem an ill-advised disturbance to the balance established in the *McVey* test, especially in an at-will setting.

son's campaign offends *Elrod*'s prohibition on politically-motivated firings.[2]

The *Elrod-Branti* line of cases establishes that a public employee may not, consistent with the First and Fourteenth Amendments, be terminated for her political affiliation or lack thereof. *Elrod*, 427 U.S.

---

[2]In response to our colleague's concurring opinion, we emphasize again that we accept Ms. Smith's allegations as true. We read them liberally, as well, as indeed we must to analyze them at all; Ms. Smith's arguments have mutated to such an extent on appeal that the current iteration —focusing, it appears, on freedom of association rather than expression —was not addressed by the district court. Other than the Smiths' complaint, none of the filings of either party before the district court are included in the paltry record on appeal. Therefore, it is unclear whether Ms. Smith even raised what now appear to be her associational claims below.

Even interpreted liberally, however, Ms. Smith must show, as a threshold matter, that the act she complains of deprives her of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983; *Marshall County Bd. of Ed. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993). The issue before us is whether, in claiming she was fired because Judge Frye *believed* she supported her son's candidacy, Ms. Smith alleged a violation of her rights under the First Amendment. For the reasons discussed in the body of this opinion, we conclude that she does not. Significantly, Ms. Smith does not allege that action was taken against her because of her conduct, speech or political affiliation. Indeed, she alleges no conduct or speech. Ms. Smith's complaint and the record in this case contain no allegations of what Ms. Smith's views or affiliation are or were. Nor does she allege Judge Frye was aware of her beliefs or affiliation when he fired her. We are simply unable to find a constitutional basis for such an attenuated claim, nor can we read any of the *Elrod* line of cases as creating one.

As the concurrence would have it, *post* at 18 n.*, Ms. Smith's complaint asserts both a "view" (that her son should be elected) and an "affiliation" (with her son's candidacy). On its face, it does *not*. In Ms. Smith's own words, which we accept as true, Judge Frye dismissed her not because of what her views or affiliation *were* but because of, again using Ms. Smith's own word, what he "believed" they might have been. While the concurrence may not view such a claim as attenuated, we do; even the concurrence goes on to acknowledge that Ms. Smith's allegations lie outside the heartland of *Elrod*.

at 358-59 (plurality opinion); *Knight v. Vernon*, 214 F.3d 544, 548 (4th Cir. 2000). "[T]he First Amendment forbids government officials to discharge or threaten to discharge public employees solely for not being supporters of the political party in power, unless party affiliation is an appropriate requirement for the position involved." *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 64-65 (1990). These cases concern the political practice of patronage, or conditioning public employment on party membership or support.

Patronage violates the First Amendment because of the "restraint it places on freedoms of belief and association." *Elrod*, 427 U.S. at 355 (plurality opinion). Because patronage forces employees to choose either to affiliate with a particular party or risk losing their jobs, it compels speech and belief. *Id.* at 356-57. However, patronage dismissals of individuals in policymaking positions are constitutional, "to the end that representative government not be undercut by tactics obstructing the implementation of policies of the new administration, policies presumably sanctioned by the electorate." *Id.* at 367. Ms. Smith argues, in effect, that Judge Frye engaged in improper patronage by firing her because her son filed to run for office and because Judge Frye perceived that she supported her son's candidacy.[3]

The facts here, however, present a significant departure from the traditional *Elrod* scenario. In this circuit, *Elrod* cases have fallen into two primary archetypes: (1) cases in which the person being fired is actively associated with a political party or faction (or actively chooses *not* to be so associated) and the individual making the firing decision is a person seeking office, *e.g.*, *Knight v. Vernon*, 214 F.3d 544, 545-48 (4th Cir. 2000); or (2) cases in which newly elected or appointed officials fire supporters of their rivals during a political transition, *e.g.*, *Sales v. Grant*, 158 F.3d 768, 770-74 (4th Cir. 1998);

---

[3]Neither party offers this court guidance on whether the position of magistrate court clerk, Ms. Smith's former post, is the type of position to which *Elrod*'s protections extend. The record in this case is also devoid of facts that would demonstrate whether Ms. Smith's position is a policymaking position, for which dismissals for reasons of patronage are constitutionally permissible. *See also Branti*, 445 U.S. at 518 ("[T]he question is whether . . . party affiliation is an appropriate requirement for the effective performance of the public office involved.")

*Jenkins v. Medford*, 119 F.3d 1156, 1159 (4th Cir. 1997); *Cooper v. Lee County Bd. of Supervisors*, No. 98-2083, 1999 U.S. App. LEXIS 19705, at *2-9 (4th Cir. Aug. 19, 1999) (unpublished). Indeed, both *Elrod* and *Branti* presented factual scenarios fitting within the latter category. *See Elrod*, 427 U.S. at 350-51; *Branti*, 445 U.S. at 509-10.

A brief review of the facts of some of the cases in the *Elrod* line is useful in analyzing the facts now before us. We first consider a case representing the initial archetypal fact pattern described above. The plaintiff in *Knight v. Vernon*, a former jailer, sued the sheriff who fired her, claiming her termination was an act of patronage in violation of the First Amendment. 214 F.3d at 545. In *Knight*, the firing sheriff was running for reelection and used staff meetings to promote his reelection campaign, urging employees to contribute money, display his signs in their yards, and attend campaign events. *Id.* at 547. The plaintiff did not participate in the sheriff's reelection efforts. When she expressed concern about her job security, the sheriff instructed her to "throw [herself] completely into his campaign." *Id.* at 547-48. After winning the election, the sheriff fired the plaintiff. *Id.* at 548. We reversed the district court's grant of summary judgment in favor of the government employer on the plaintiff's First Amendment claim, finding that political allegiance was not an appropriate job requirement for a jailer and that the plaintiff therefore had stated a claim under *Elrod*. *Id.* at 545.

In the sense that the *Knight* plaintiff's firing came *after* the sheriff's successful campaign, *Knight* is also similar to the cases whose facts fit squarely into the second paradigm[4]: those involving the housecleaning that can occur during a political transition. In *Jenkins v. Medford*, we considered, en banc, the firings of two deputies by a North Carolina sheriff because the deputies failed to support the sheriff in an election. 119 F.3d at 1159. There, the fired deputies had supported the losing candidate, and when the winner was seated, he

---

[4]Indeed, the lines between the two types of *Elrod* cases are not always bright and distinct. However, in the first type, the official's act seems to be a *punishment* of the fired employee for her affiliation or nonaffiliation, whereas in the second type of case, the punishment of the fired employee is incidental to the firing official's real motivation to *reward* loyal supporters for their affiliation with him.

replaced them with deputies loyal to him and his campaign. *Id.* Ultimately, we determined that "in North Carolina, the office of deputy sheriff is that of a policymaker" and concluded therefore that North Carolina deputy sheriffs may be lawfully terminated for political reasons as an exception to *Elrod-Branti. Id.* at 1164.

One year after deciding *Jenkins*, we again reviewed a case involving post-election termination for political affiliation in *Sales v. Grant*. The plaintiffs in *Sales* were Democrats who had been appointed assistant registrars of Lynchburg, Va. They sued a local appointing body after it caused them not to be reappointed following the election of a new, Republican governor. 158 F.3d at 774. We held that the plaintiffs were entitled to a trial on their claims. *Id.* at 770.

An assessment of decisions of our sister circuits interpreting *Elrod* reveals the same fact patterns described above. *See, e.g.*, *Allen v. Martin*, 460 F.3d 939, 940 (7th Cir. 2006) (affirming summary judgment in favor of government officials when the plaintiff was terminated during a regime change from a position for which political affiliation was an appropriate criterion); *Borges Colon v. Roman-Abreu*, 438 F.3d 1, 6 (1st Cir. 2006) (affirming award of damages to city sanitation employees dismissed by a newly elected mayor because they shared the political affiliation of the ousted mayor); *Gentry v. Lowndes County*, 337 F.3d 481, 483-85 (5th Cir. 2003) (granting qualified immunity to newly elected county officials who terminated plaintiffs' jobs as road manager and county administrator); *Aucoin v. Haney*, 306 F.3d 268, 270-71 (5th Cir. 2002) (granting qualified immunity to an interim district attorney running for office who fired an assistant district attorney who openly supported opponent). Although these cases vary in their decisions on the merits, the facts fall consistently into one of the two patterns we have described.

By contrast, recognizing Ms. Smith's claim would lead us far afield.[5]

---

[5]For this reason we are satisfied that, even if we were to find that Ms. Smith had alleged the violation of a constitutional right, Judge Frye would nonetheless be entitled to qualified immunity in this case. Under the doctrine of qualified immunity, government officials are generally immune "from liability for civil damages insofar as their conduct does

In each of the above-cited cases, even those in which the plaintiff's claim ultimately failed, there is a clear and direct connection among the supervisor's own political association, that of the terminated employee, and the adverse employment action.

There is no such connection here. Smith alleges no affiliation with her son's candidacy, unlike the fired deputies in *Jenkins* who supported the losing candidate in the sheriff's race. *See* 119 F.3d at 1159. In fact, she alleges no affiliation with any political party or faction, making her unlike even the assistant registrars in *Sales* who were not reappointed based on their party affiliation with opponents of the newly empowered party. *See* 158 F.3d at 774. Judge Frye was not himself seeking office and terminating those who did not support his candidacy, as was allegedly done by the supervising sheriff in *Knight*. *See* 214 F.3d at 545. Nor was Judge Frye cleaning house after an electoral victory, as in the fact patterns of *Elrod*, *Branti*, *Jenkins*, and *Sales*. *See Elrod*, 427 U.S. at 350-51; *Branti*, 445 U.S. at 509-10; *Jenkins*, 119 F.3d at 1159; *Sales*, 158 F.3d at 774. Finally, unlike *all* of the cited Fourth Circuit cases, Ms. Smith was terminated at the time the field for the Republican primary was set and included her son and the incumbent circuit clerk and not after an election as in the typical *Elrod* scenario. The application of *Elrod*'s rationale—protecting pub-

---

not violate clearly established . . . constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Johnson v. Caudill*, 475 F.3d 645, 650 (4th Cir. 2007).

The Supreme Court has held that "the test of 'clearly established law'" is not to be applied at a level of broad "generality" but rather, "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense." *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987). "[I]n the light of pre-existing law the unlawfulness [of the official's actions] must be apparent." *Id.* at 640. Ms. Smith admits that she cannot "identif[y] a case under 42 U.S.C. § 1983 directly on point," Appellants' Br. at 14, and neither can we. Given this, and our discussion of the cases applying *Elrod*, any unlawfulness of Judge Frye's actions here in firing Ms. Smith could only have been "[un]apparent," *Anderson*, 483 U.S. at 640, and therefore not likely to be "known [by] . . . a reasonable person," *Harlow*, 457 U.S. at 818.

lic employees for whom political affiliation is not a legitimate job qualification from coercion with respect to their political beliefs—is far less compelling on these facts. Given the decision-maker's detachment from the political process at play, any conclusion that Judge Frye's decision was intended to punish Ms. Smith for expressive conduct or political affiliation or to compel her conduct or affiliation requires an additional inferential leap which we are unwilling to make.

Indeed, the very differences between the circumstances here and those in the cases within the usual *Elrod* fact patterns suggest that Judge Frye had constitutionally valid reasons for dismissing Ms. Smith. Although we of course accept as true at this stage of the litigation Ms. Smith's allegation that she was fired because Judge Frye believed that she supported her son's candidacy rather than that of the incumbent circuit clerk, such an allegation does not necessarily, by itself, state a First Amendment claim under *Elrod*. Rather, Judge Frye's belief that Ms. Smith supported her son's candidacy might have lead Judge Frye to conclude that, in a small office in which Ms. Smith was working with the incumbent circuit clerk, the potential conflict of interest would hinder the efficient administration of the judicial system. It is undisputed that Judge Frye's colleague testified in the state administrative proceedings that Judge Frye expressed those very concerns to him. In the context of at-will employment, such a belief is more than an adequate reason to dismiss an employee.

Extending *Elrod* to Ms. Smith's claim would require courts to undertake subjective fact-finding inquiries into government officials' actual motivations in making at-will employment decisions to a greater extent than and in contexts in which this court has never ventured. Such an exercise, on these attenuated facts, would topple the *Elrod-Branti* balance of "[F]irst [A]mendment rights of the [public employees] and the need for efficient and effective delivery of public services." *Terry v. Cook*, 866 F.2d 373, 377 (11th Cir. 1989). As the Supreme Court has cautioned, "if an employee's private political beliefs would interfere with the discharge of his public duties, his First Amendment rights may be required to yield to the State's vital interest in maintaining governmental effectiveness and efficiency." *Branti*, 445 U.S. at 517.

We are disinclined to disturb that balance on these facts. Judge Frye dismissed Ms. Smith from her at-will employment as magistrate court clerk, a position to which it is unclear *Elrod*'s protections apply,[6] neither in the heat of his own campaign nor during a victory house-cleaning. We do not find that Ms. Smith alleges a constitutional violation here, and therefore affirm the district court's dismissal of her claims.

### III.

We now turn to Mr. Smith's argument that the district court improperly dismissed the complaint as to him for lack of standing. "A district court's dismissal for lack of standing, and therefore lack of jurisdiction, is a legal ruling that we review de novo." *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005).

It is well settled that under Article III of the United States Constitution, a plaintiff must establish that a "case or controversy" exists "between himself and the defendant" and "cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975). Standing has three elements:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

---

[6]The uncertainty regarding whether Ms. Smith's position was of the type entitled to *Elrod*'s protections provides another reason that, even if Ms. Smith could state a claim under *Elrod*, Judge Frye would be entitled to qualified immunity. It is not "clearly established" that Ms. Smith's position is a protected one, rather than one for which political affiliation is a legitimate job requirement. *See Jenkins*, 119 F.3d at 1162 n.37.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations and quotations omitted).

The threshold issue in this case is whether Mr. Smith suffered an injury in fact for purposes of Article III standing. Mr. Smith alleges such an injury on two grounds. First, he argues that his First Amendment rights as a candidate for public office were chilled by Judge Frye's allegedly retaliatory firing of Mr. Smith's mother. Additionally, Mr. Smith avers that he suffered the injuries of indignity, embarrassment, and emotional distress because he felt responsible for his mother's discharge. Judge Frye responds that any legally cognizable injury flowing from Ms. Smith's dismissal is an injury to *her* for which Mr. Smith lacks standing. We address each of Mr. Smith's arguments in turn and conclude that he does not have standing to assert the instant claims.

## A.

In support of his position that his First Amendment rights were chilled by Judge Frye's discharge of his mother, Mr. Smith relies upon our decision in *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474 (4th Cir. 2005), in which a law student published letters in the school's newspaper criticizing a professor and his grading process after she had been unable to complete an exam because of a migraine headache. After publishing the letters, the student received a failing grade. Later, the student was permitted to retake the exam but was only provided three days' notice. We held that to demonstrate injury in fact, it was sufficient for the plaintiff in that case to show that her First Amendment activities had been chilled and that she need not show she ceased those activities altogether in order to state a cause of action. *Id.* at 500. A chill results "if the defendant's allegedly retaliatory conduct would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights." *Id.* Accordingly, Mr. Smith argues that even though his candidacy went on unaffected after his mother's firing, "a person of ordinary firmness" would have been deterred from exercising his First Amendment rights.

However, *Constantine* is fundamentally distinguishable from this case. In *Constantine*, the plaintiff's First Amendment rights were

chilled by direct retaliatory action against her, whereas in the instant case, the alleged retaliatory action was taken not against Mr. Smith at all, but rather against a third party, his mother. Mr. Smith cites to no authority that supports his contention that further speech of a person who exercised First Amendment rights (here, Mr. Smith in filing his candidacy) might be chilled by an allegedly retaliatory action (here, the firing of Ms. Smith) exacted upon a different person.[7] Quite simply, under the circumstances of this case, an adverse employment action against Ms. Smith does not create a concrete and particularized violation of any legally protected right of Mr. Smith's. *See Lujan*, 504 U.S. at 560.[8]

## B.

With respect to Mr. Smith's argument that he suffered injury in the form of emotional distress after Judge Frye terminated his mother, the

---

[7]In fact, at least one Supreme Court decision casts doubt on whether such an indirect chill could ever give rise to a cause of action. *See Laird v. Tatum*, 408 U.S. 1, 10-11 (1972). In *Laird*, the Court held that when the government engages in "regulatory, proscriptive, or compulsory" action, a plaintiff's speech rights are chilled only if he is "either presently or prospectively subject" to the challenged exercise of government power. *Id.* (citations omitted). Here, Mr. Smith is a bystander to an allegedly unlawful government action (his mother's firing), but he himself is not "presently or prospectively subject" to the challenged action. *See id. Cf. Younger v. Harris*, 401 U.S. 37, 41-42 (1971) (holding that plaintiffs who had not been indicted in a state proceeding had no "controversy" with the state where they alleged simply that a law's existence, and the state prosecution of a third party under such law, made them feel inhibited in their political advocacy activities).

[8]No matter how disappointing his mother's termination was for him, Mr. Smith's candidacy for public office cannot immunize his mother from the downside of at-will employment. That is, Ms. Smith's firing for legally permissible reasons, or for no reasons at all, gives rise to no claim that *Mr. Smith's* First Amendment rights were being chilled. Any claim that Ms. Smith was fired for unlawful reasons can be brought by her, the directly injured party, as evidenced by this lawsuit. *See Singleton v. Wulff*, 428 U.S. 106, 113-14 (1976) (noting that the directly-injured parties "themselves usually will be the best proponents of their own rights"); *Warth*, 422 U.S. at 499.

district court applied the venerable common-law tort principle that "one cannot collect for emotional damage or humiliation occasioned by harm done to a family member absent fairly particular circumstances,"[9] and noted that claims under § 1983, like Mr. Smith's, are "at [their] root[s,] . . . tort[s]." *Smith v. Frye*, 2006 U.S. Dist. LEXIS 39909, at *12. Mr. Smith now contends that the district court's reliance on tort principles was misplaced.

We, however, find the district court's reference to tort-law principles entirely appropriate in this instance. *See Smith v. Wade*, 461 U.S. 30, 34 (1983) (noting that § 1983 "was intended to create a species of tort liability" and that the Supreme Court "look[s] . . . to the common law of torts . . . to carry out the purpose and policy of the statute" (internal quotations omitted)). We agree with the district court that "[a]llowing an adult son to collect for emotional damages and humiliation resulting from his mother's discharge from her employment casts the net of possible liability too broadly," *Smith v. Frye*, 2006 U.S. Dist. LEXIS 39909, at *14, and therefore, that such emotional distress is insufficient as an Article III injury in fact. Because we reject as insufficient both of the injuries Mr. Smith alleges, we affirm the district court's ruling that he lacked standing to bring the instant suit and its dismissal thereof as to Mr. Smith.

IV.

Having concluded that Ms. Smith has failed to state a claim that Judge Frye violated her First Amendment rights and that Mr. Smith lacks standing to assert claims against Judge Frye based on his mother's termination, we affirm the district court's dismissal of the Smiths' complaint.

*AFFIRMED*

---

[9]For example, under West Virginia law, a third-party plaintiff may recover for intentional infliction of emotional distress if a defendant's "extreme and outrageous" conduct, directed at a member of the plaintiff's immediate family while he was physically present, caused the plaintiff "severe emotional distress." *See, e.g.*, *Courtney v. Courtney*, 413 S.E.2d 418, 422 (W. Va. 1991). Obviously, Mr. Smith could not prove these elements on a state-law tort claim.

DIANA GRIBBON MOTZ, Circuit Judge, concurring in part and concurring in the judgment:

I join the majority opinion except for its determination that Mary Lou Smith has failed to allege a cause of action for violation of her First Amendment rights. I believe that in her complaint Ms. Smith has indeed alleged facts sufficient to state a claim against Andrew N. Frye. But because applicability of the First Amendment to facts like those alleged was not clearly established at the time of the challenged discharge, qualified immunity protects Judge Frye from liability. Accordingly, I concur in the judgment.

I.

A.

"[T]he purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A 12(b)(6) motion "'does not resolve contests surrounding the facts [or] the merits of a claim.'" *Id.* (*quoting Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). Accordingly, an appellate court "may only affirm the dismissal of the complaint if 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 249-50 (1989) (*quoting Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). Moreover, when a complaint alleges a civil rights violation, "we must be especially solicitous of the wrongs alleged and must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief *under any legal theory*" that could be proved consistent with the allegations. *Edwards*, 178 F.3d at 244 (overturning dismissal of suspended government employee's First Amendment claims). With these principles in mind, I turn to the allegations of Ms. Smith's complaint, which we must take as true at this juncture.

Beginning in November 2002, Ms. Smith served as the clerk of the Magistrate Court of Mineral County, West Virginia, under the supervision of Judge Frye, Chief Judge of the 21st Judicial Circuit of West Virginia. Ms. Smith has an adult son, Greg Smith. On January 30, 2004, Greg filed to run for circuit clerk of Mineral County; he would

oppose the incumbent clerk in the Republican primary. Less than a week later, Judge Frye fired Ms. Smith. Judge Frye told another judge that "he wanted to fire Ms. Smith because her son had filed to run for circuit clerk" and he was "angry at" her for this reason. Prior to this time "no complaints had been made by anyone about Ms. Smith's performance as the Magistrate Clerk; to the contrary she was widely respected by everyone with whom she worked." Ms. Smith's complaint alleges that Judge Frye discharged her "because her son, Greg Smith, had filed to run against the incumbent Circuit Clerk in the Republican Party primary and *because the defendant believed that Ms. Smith supported her son, not the incumbent circuit clerk.*" (emphasis added).

The question is whether these allegations, viewed in the light most favorable to Ms. Smith, state a First Amendment claim. I believe they do.

## B.

"[P]olitical belief and association constitute the core of those activities protected by the First Amendment." *Elrod v. Burns*, 427 U.S. 347, 356 (1976) (plurality). For that reason, the Supreme Court has held that "the First Amendment prohibits the dismissal of a public employee solely because of [her] private political beliefs." *Branti v. Finkel*, 445 U.S. 507, 516-17 (1980). The First Amendment also "prohibits the firing of public employees solely for the reason that they [are] not affiliated with a particular political party *or* candidate." *Knight v. Vernon*, 214 F.3d 544, 548 (4th Cir. 2000) (emphasis added) (internal quotation marks omitted). The only exception to the *Elrod-Branti* bar on politically motivated personnel decisions occurs when an employer "can demonstrate that party affiliation [or political allegiance] is an appropriate requirement for the effective performance of the public office involved." *Branti*, 445 U.S. at 518. Thus a public employer may discharge an employee because of her political beliefs or allegiance only if the employer "can demonstrate" that this is an "appropriate requirement" for the employee's "public office." *Knight*, 214 F.3d at 549 (citing *Branti*, 445 U.S. at 518) (internal quotation marks omitted).

In this case, Ms. Smith has alleged that Judge Frye fired her "because [he] believed that [she] supported her son, not the incumbent circuit clerk" in the upcoming Republican primary.* Certainly, Ms. Smith could prove a "set of facts . . . consistent with [this] allegation[ ]" that would entitle her to relief for a violation of her First Amendment rights. *Hishon*, 467 U.S. at 73. For example, Ms. Smith could prove that Judge Frye dismissed her "because of [her] private political beliefs," i.e., her support for a particular political candidate — her son. *See Branti*, 445 U.S. at 517. Or, she could prove that Judge Frye discharged her solely because she was not "affiliated with" a particular candidate, i.e., her son's opponent — the incumbent circuit clerk. *See id.* In these situations, each consistent with the com-

---

*Although the majority insists that it reads Ms. Smith's complaint "liberally," *ante* at 6 n.2, it clearly fails to do so. Thus the majority contends that the complaint fails because it does not allege "what Ms. Smith's views or affiliation are or were." *Id.* In fact, as noted above, the complaint alleges that Judge Frye discharged Ms. Smith "because [he] believed that [she] supported her son, not the incumbent circuit clerk." Read in the light most favorable to Ms. Smith, that allegation asserts both a "view" (that her son should be elected) and an "affiliation" (with her son's candidacy). The majority also faults the complaint for its failure to allege that "Judge Frye was aware of [Ms. Smith's] beliefs or affiliation." *Id.* But surely Ms. Smith's allegation that Judge Frye fired her *because* of what he "believed" her views and affiliation to be suffices. Judge Frye may have been wrong about Ms. Smith's beliefs or affiliation; but if he fired her for an unconstitutional reason she would still have a cause of action. "[A]lleged discrimination is no less malevolent because it was based on an erroneous assumption." *Estate of Amos ex rel. Amos v. City of Page*, 257 F.3d 1086, 1094 (9th Cir. 2001) (allowing claim that city discriminated against deceased because it believed he was Native American, even though he was actually white). And even if Ms. Smith had to demonstrate that she actually did support her son, surely that fact "could be prove[n] consistent with the allegations" in the complaint. *Hishon*, 467 U.S. at 73. When read in the best light for Ms. Smith, her complaint alleges that Judge Frye used the power of the state to punish Ms. Smith for her political affiliation and/or views. Rather than being "attenuated," *id.*, this claim sounds in the heart of the First Amendment. *See West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943) ("If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics . . . or other matters of opinion . . . .").

plaint, Judge Frye's dismissal of Ms. Smith would be "substantially motivated by political considerations," *Sales v. Grant*, 158 F.3d 768, 779 (4th Cir. 1998), not justified by any "appropriate" job requirement, and so contrary to the First Amendment.

Of course, discovery might produce evidence that Judge Frye discharged Ms. Smith, as the majority posits, *ante* at 3, 10-11, to avoid disruption to the judicial system. Although Ms. Smith's complaint states that the circuit clerk "does not have any supervisory or other direct employment relationship with the Magistrate Clerk," discovery may reveal that the proper functioning of the judicial system required Ms. Smith and the incumbent circuit clerk to work closely together. If the evidence demonstrates that Judge Frye feared that Greg Smith's candidacy would disrupt that relationship, he may well have violated no constitutional provision in discharging Ms. Smith. However, no evidence yet supports this conclusion.

Similarly, although some clerks have purely ministerial and administrative duties, others make policy or enjoy a confidential relationship to their superiors, and as the majority acknowledges, *ante* at 7 n.3, nothing in the record to date informs us as to which category Ms. Smith's position belonged. If Ms. Smith's duties were of the ministerial sort, her political beliefs and affiliations were plainly irrelevant to "effective performance" of her job. On the other hand, if discovery were to produce evidence indicating that Ms. Smith made policy, those beliefs might well be an "appropriate" job requirement.

But at this juncture there has been *no* discovery and so we have *no* basis for holding that her discharge can be justified. Rather, we must read the allegations in the complaint in the light most favorable to Ms. Smith; if that is done, she undoubtedly has alleged a cause of action under the First Amendment.

## II.

I agree with the majority, however, that Ms. Smith has not alleged a violation of clearly established law. Our determination of whether law is clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "[T]he right allegedly violated must

be defined at the appropriate level of specificity before a court can determine if it was clearly established." *Wilson v. Layne*, 526 U.S. 603, 615 (1999). "[T]he focus is on whether the [official] had fair notice that [his] conduct was unlawful." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

The most apposite Supreme Court cases, *Elrod* and *Branti*, address traditional political patronage practices quite unlike Ms. Smith's allegations. And as the majority persuasively explains, our court and others have usually applied the First Amendment principles articulated in *Elrod* and *Branti* to patronage situations. *See ante* 7-9. Of course, there need not be a case directly on point for the law to be clearly established for qualified immunity purposes. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Buonocore v. Harris*, 65 F.3d 347, 356-57 (4th Cir. 1995). But Ms. Smith has not cited, and we have not found, a single case in which any court, prior to February 2004 (the date of Ms. Smith's discharge), had recognized a claim similar to hers. That is, no court had allowed a claim that a discharge violated the First Amendment *not* because the employer was clearing positions for his own supporters or punishing an employee for her political activity, but because the employer was "angry" at the employee due to her relative's candidacy and, absent any conduct on her part, because he "believed" that she supported her relative, "not the incumbent circuit clerk."

This may be an unfair reason for firing Ms. Smith but, because she was an at-will employee, Judge Frye could fire her for no reason or any reason at all — except an unlawful reason. I believe that she has alleged facts sufficient to make out a claim that the firing was unlawful; but given the dearth of authority to that effect, I cannot conclude that Judge Frye was on "fair notice" of this. As such, Judge Frye is entitled to qualified immunity.

For this reason, I agree with the majority that we must uphold the dismissal of the complaint.