Joni **FIELDS**, Plaintiff,

v.

**COUNTY OF BEAUFORT IN the State of SOUTH CAROLINA, Elizabeth Smith, Janice Young, and Addie Lee, in their official and individual capacities, Defendants.**

**Civil Action No. 9:08–3966–SB.**

United States District Court,
D. South Carolina,
Beaufort Division.

March 22, 2010.

Tandi D. Ross, Cromer and Mabry, James Lewis Cromer, Columbia, SC, for Plaintiff.

Robert W. Achurch, III, Jason Franklin Ward, Mary Bass Lohr, Howell Gibson and Hughes, Marshall H. Waldron, Jr., Michael D. Freeman, Griffith Sadler and Sharp, Beaufort, SC, D.L. Dirk Aydlette, III, Gignilliat Savitz and Bettis, Columbia, SC, Christy L. Scott, Scott and Payne, Walterboro, SC, Amanda A. Bailey, McNair Law Firm, Myrtle Beach, SC, for Defendants.

## ORDER

SOL BLATT, JR., Senior District Judge.

On Monday, February 22, 2010, the Court held a hearing on the pending motions in the above-captioned matter. After the hearing, the Court issued an order granting Defendant Beaufort County's motion for summary judgment and Defendant Janice Young's motion for summary judgment. The Court declined to grant Defendant Addie Lee's motion for summary judgment but instead dismissed the Plaintiff's defamation claim against Lee without prejudice for failure to state a claim. Lastly, the Court granted in part Defendant Elizabeth Smith's motion for judgment on the pleadings, supplemental motion for judgment on the pleadings, and motion for summary judgment.[1] With respect to the Plaintiff's claim against Smith in her individual capacity pursuant to 42 U.S.C. § 1983,[2] the Court declined to rule and granted the Plaintiff ten days to provide the Court with any additional information or evidence relating to Smith's knowledge at the time she terminated the Plaintiff. The Court also granted Smith

---

1. Because the Plaintiff agreed to dismiss her § 1983 and wrongful discharge claims against Smith in her official capacity, as well as her civil conspiracy and defamation claims against Smith, the Court found Smith's motions moot in these respects. The Court granted Smith's motions on the Plaintiff's wrongful discharge claim against Smith in her individual capacity.

2. In this cause of action, the Plaintiff contends that Smith violated her First Amendment freedoms of speech and association by terminating her for engaging in constitutionally protected speech. Specifically, the Plaintiff alleges: "On June 11, 2008, after Defendant Smith won her re-election campaign, defendant Smith immediately told plaintiff that plaintiff had not been loyal to her. On June 12, 2008, defendant Smith called plaintiff into her office with defendant Young present to discuss plaintiffs disloyalty. Defendant Smith considered plaintiff's silence during the election to mean that plaintiff was not in favor of defendant Smith's re-election." (Entry 23 ¶ 13.)

ten days to respond to the Plaintiff's submission.

On March 3, 2010, the Plaintiff filed a supplement and attached portions of the Plaintiff's and Field's depositions. In her supplement, the Plaintiff admits that she could not recall telling Smith during her termination meeting that Judge Mullen's assistant's account of the incident, as related by Judge Mullen to Smith, was false. However, the Plaintiff points to Smith's deposition, where Smith admitted discussing the topic with Fields during the termination meeting. The relevant portion of Smith's deposition is as follows:

> Q. Tell me about the meeting on June 12, when you met with Joni about these matters that led to her leaving the department, leaving the clerk's office.
>
> A. I asked her into my office. Janice was there. I said, Joni, is there anything you want to tell me. She said no. I said, nothing at all[?] She said no.
>
> This is all to the best of my recollection, Mr. Cromer. There could have been something slightly at variance.
>
> I said, well, Joni, Judge Mullen has told me that you solicited her assistant to work for the new clerk. Joni said, I did not; I have never been disloyal to you. I said, I have got you on one side and a circuit judge and many other judges—I mean other lawyers, voters and another elected official on the other side; I cannot have an employee that will interfere with a judge's employee on my staff; you may resign or I will terminate you, whichever is best; I don't know what you would prefer.
>
> Q. What did she say?
>
> A. I don't recall.
>
> Q. What happened?
>
> A. I said, just think about it and make up your mind. She submitted a resignation letter sometime later.

(Entry 103–2 at 4–5.)

The Plaintiff points out that Smith never asked Hargrove about the incident, and the Plaintiff asserts that "it was Hargrove who was unhappy with her position and [it was Hargrove who] asked the Plaintiff whether she thought a new clerk would hire her." (Entry 103 at 2.)

In response to the Plaintiff's supplement, Smith contends that the relevant inquiry is not whether the Plaintiff actually engaged in the alleged conduct, but rather, whether Smith believed that the Plaintiff engaged in the alleged conduct. Smith points to *Holland v. Washington Homes, Inc.*, 487 F.3d 208 (4th Cir.2007), where the Fourth Circuit affirmed the district court's grant of summary judgment in favor of an employer who terminated an employee for threatening his supervisor. In *Holland*, the Fourth Circuit stated:

> Here, the uncontested evidence established that DeCesaris (the decisionmaker) honestly believed that Holland deserved to be discharged for threatening Peck, regardless of whether Holland did in fact issue the threats. Thus, Holland's evidence failed to address whether DeCesaris did not honestly believe that the threats were made, and ultimately, "[i]t is the perception of the decisionmaker which is relevant." [*Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 444 (4th Cir.1998).] *Id.*; *see, e.g., Azimi v. Jordan's Meats, Inc.*, 456 F.3d 228, 246 (1st Cir.2006) ("In assessing pretext, a court's focus must be on the perception of the decisionmaker, that is, whether the employer believed its stated reason to be credible." (internal quotation marks omitted)).

Accordingly, we agree with the district court's treatment of the issue:

Even if [Holland] did not threaten Ms. Peck, which the court must accept for purposes of this motion, Plaintiff has come forward with no evidence to show that Mr. DeCesaris did not believe [Holland] had made threats when Mr. DeCesaris decided to fire [him].

*Id.* at 217.[3]

Here, Smith contends that she asked for the Plaintiff's resignation because of the complaint made by Judge Mullen, as supported by her deposition testimony and Hargrove's affidavit. And Smith further contends that she is entitled to summary judgment because the Plaintiff has offered no evidence to show that Smith did not honestly believe what Judge Mullen told her.

### ANALYSIS

In her motion for summary judgment, Smith contends that she is entitled to qualified immunity.[4] Government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Officials lose the protection of qualified immunity if it appears that (1) they violated a statutory or constitutional right of the plaintiff, and (2) the right was "clearly established" at the time of the acts complained of such that an objectively reasonable official in that position would have known of the right. The immunity shield

operates at two levels: (1) the particular right must be clearly established in the law; and (2) the manner in which this right applies to the actions of the official must also be apparent. "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner,* 973 F.2d 295, 298 (4th Cir.1992). With these principles in hand, the Court first considers whether the Plaintiff has stated a cause of action for violation of her First Amendment freedoms of speech and/or association.

### A. *First Amendment Freedom of Speech*

Pursuant to the First Amendment, employees have a right not to have their employment adversely affected because they engage in constitutionally protected speech. *Rankin v. McPherson,* 483 U.S. 378, 383, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987); *Hughes v. Bedsole,* 48 F.3d 1376, 1385 (4th Cir.1995); *Connick v. Myers,* 461 U.S. 138, 147–48, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Pickering v. Bd. of Educ.,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). To prove that an adverse employment action violated a public employee's First Amendment rights, a employee must satisfy the three-prong test set forth in *McVey v. Stacy,* 157 F.3d 271, 277–78 (4th Cir.1998).

First, the employee must have spoken out as a citizen, and not as an employee, on a matter of public concern. For speech to implicate a matter of public concern, it must relate to a "matter of political, social, or other concern to the

---

3. In *Holland,* the Plaintiff sued his former employer for discrimination and wrongful termination based on his race, pursuant to Title VII of the Civil Rights Act. Because the Plaintiff has not alleged any protected-class discrimination under Title VII in the instant case, it appears that *Holland,* although perhaps instructive, is not directly on point.

4. Courts are to consider as a threshold matter whether officials are entitled to qualified immunity, and if not, then move on to consider other issues. *Torcasio v. Murray,* 57 F.3d 1340, 1352 (4th Cir.1995).

community." *Connick*, 461 U.S. at 146, 103 S.Ct. 1684. Absent highly unusual circumstances, First Amendment protection is not available when "a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest." *Id.* at 147, 103 S.Ct. 1684.

Second, the employee's interest in the expression at issue must have outweighed the employer's "interest in the effective and efficient fulfillment of its responsibilities to the public." *Connick*, 461 U.S. at 150, 103 S.Ct. 1684; *Joyner v. Lancaster*, 815 F.2d 20, 23 (4th Cir.1987). As the Court in *Connick* summarized:

> To this end, the Government, as an employer, must have wide discretion and control over the management of its personnel and internal affairs. This includes the prerogative to remove employees whose conduct hinders efficient operation and to do so with dispatch. Prolonged retention of a disruptive of otherwise unsatisfactory employee can adversely affect discipline and morale in the work place, foster disharmony, and ultimately impair the efficiency of an office or agency.

461 U.S. at 151, 103 S.Ct. 1684 (quotation marks and citations omitted).

Third, a sufficient causal nexus must have existed between the protected speech and the adverse employment action. *McVey*, 157 F.3d at 277–78; *see also Smith v. Frye*, 488 F.3d 263 (4th Cir.2007); *Ridpath v. Bd. of Governors of Marshall Univ.*, 447 F.3d 292 (4th Cir.2006). The causation requirement is "rigorous" in that the protected speech must have been the "but for" cause of the adverse employment action. *Ridpath*, 447 F.3d at 318 (citing *Huang v. Bd. of Governors*, 902 F.2d 1134, 1140 (4th Cir.1990)).

Here, the Plaintiff contends that she engaged in protected speech involving a matter of public concern by choosing to remain silent and neutral during Smith's re-election campaign. In contrast, Smith contends that the Plaintiff's neutrality was not protected speech because it did not raise an issue of public concern. In support, Smith cites *Olivo v. Mapp*, an unpublished Fourth Circuit opinion where the court found that a deputy was merely communicating a private concern when he did not buy a ticket to a local fund raiser and expressed disapproval of it. 57 F.3d 1067 (4th Cir.1995). The panel found that the speech was "more aptly characterized as an expression of frustration over being asked to pay forty dollars for a crab feast." *Id.*

While the Court hesitates to counter one unpublished decision with another, *Orga v. Williams*, demonstrates that neutrality in a campaign can be speech on a matter of public concern. 68 F.3d 460 (4th Cir.1995) (unpublished). Specifically, in *Orga*, the Fourth Circuit concluded that deputies engaged in speech on a matter of public concern when they refused to support the sheriff actively. *Id.* at *4. The court wrote:

> [The plaintiffs] alleged that they were terminated because they had not supported [the sheriff's] candidacy and because they had been suspected of supporting his rivals. We agree with the district court that their political speech in the context of an election for sheriff involved a matter of public concern.

*Id.*

More recently, however, in *Frye*, the Fourth Circuit affirmed the district court's ruling that the plaintiff failed to state a claim that her termination violated her First Amendment speech rights, where the plaintiff had not exercised any First Amendment rights prior to her discharge. 488 F.3d at 267. In *Frye*, the plaintiff, who worked as the clerk of a magistrate judge, alleged that she was fired because

her employer believed that she supported her son's candidacy for the office of clerk and not that of the incumbent clerk. The court stated:

> Ms. Smith argues that the district court erred in relying upon cases involving allegedly retaliatory actions taken against public employees based on the content of their speech rather than on cases addressing public employees' associational rights. **Indeed, the district court concluded that because Ms. Smith does not allege she said or did anything in support of her son's candidacy (i.e., she does not allege she exercised First Amendment rights) that her claim failed as a matter of law.** In reaching this result, the district court applied the so-called *McVey* test, our circuit's three-prong test to determine if a retaliatory employment action violates an employee's First Amendment rights.
>
> . . .
>
> **Because the first prong of the *McVey* test requires that the "public employee . . . have spoken out as a citizen . . . on a matter of public concern," [ ] the district court found Ms. Smith's claim failed because she had not spoken or expressed herself in any way. We find no error in the district court's analysis on this issue,** but we agree with Ms. Smith that we must also review the claim that her firing violated her First Amendment associational rights.

488 F.3d at 267 (emphasis added).

Here, the Plaintiff does not allege that she did or said anything in support of any candidate for Clerk of Court; rather, she asserts that she remained neutral and that Smith construed her silence during the campaign to mean that she did not support Smith's re-election.[5] (Entry 23 ¶ 13.) After review, the Court has serious doubts

about whether Smith has established that she spoke out as a citizen, and not as an employee, on a matter of public concern, particularly in light of *Frye*. Furthermore, even assuming that the Plaintiff's silence did amount to constitutionally protected speech, the Court also has serious doubts about whether a sufficient causal nexus exists between the Plaintiff's silence and her termination. As an initial matter, the Plaintiff testified in her deposition that she believed she was let go because of Janice Young. (Entry 66–3 at 32.) Moreover, it does not seem that the Plaintiff can establish that "but for" her silence, she would not have been terminated, especially in light of Smith's testimony that she terminated the Plaintiff because of her disloyalty, i.e., because of what Judge Mullen told her about the Plaintiffs solicitation of her assistant. Although the Plaintiff denies having solicited Judge Mullen's assistant, it is undisputed that Judge Mullen told Smith that the Plaintiff had solicited her assistant.

█ In any event, even assuming for the sake of argument that the Plaintiff engaged in protected speech; that the Plaintiff's interest in the speech outweighed Smith's interest in the effective administration of the office; and that the Plaintiff would not have been terminated but for her protected speech, the Court nevertheless finds that Smith would be entitled to qualified immunity. As previously set forth, the qualified immunity shield operates at two levels: (1) the particular right must be clearly established in the law; and (2) the manner in which this right applies to the actions of the official must also be apparent. *Maciariello*, 973 F.2d at 298.

---

5. In her deposition, when asked whether she supported the other candidate at all or campaigned against Smith, the Plaintiff replied, "no." (Entry 94–1 at 7.)

Here, although the broad proposition of the law in this area arguably may be clearly established, the Court cannot conclude that Smith's actions transgressed bright lines, particularly where reasonable minds may differ as to whether the Plaintiff's silence even amounted to protected speech and where Smith had a valid reason to terminate the Plaintiff (based on Judge Mullen's complaint). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Id.*; *see also McVey v. Stacy*, 157 F.3d at 277 ("Thus, particularly in First Amendment cases, where a sophisticated balancing of interests is required to determine whether a plaintiff's constitutional rights have been violated, only infrequently will it be clearly established that a public employee's speech on a matter of public concern is constitutionally protected.") (internal quotation marks omitted) (quoting *DiMeglio v. Haines*, 45 F.3d 790, 806 (4th Cir.1995), and citing *Bartlett v. Fisher*, 972 F.2d 911, 916–17 (8th Cir.1992), where the Eighth Circuit noted that qualified immunity should rarely be denied under *Pickering* ).

## B. *First Amendment Freedom of Association*

In addition to asserting that Smith violated her First Amendment speech rights, the Plaintiff asserts that Smith violated her First Amendment freedom of association. Indeed, both parties assert that the Plaintiff's claims are similar to those involving political patronage.[6] (Entry 91 at 12; Entry 94 at 2.)

 A line of Supreme Court decisions has established that a public employee may not, consistent with the First and Fourteenth Amendments, be terminated for her political affiliation or lack thereof. *See Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (plurality opin-

ion); *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). "[T]he First Amendment forbids government officials to discharge or threaten to discharge public employees solely for not being supporters of the political party in power, unless party affiliation is an appropriate requirement for the position involved." *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990). In *Stott v. Haworth*, 916 F.2d 134, 140 (4th Cir.1990), the Fourth Circuit adopted a two-part formulation of the *Elrod–Branti* analysis as articulated by the First Circuit in *Jimenez Fuentes v. Torres Gaztambide*, 807 F.2d 236, 241–42 (1st Cir.1986). Under this two-part analysis, the court first must "examin[e] whether the position at issue, no matter how policy-influencing or confidential it may be, relates to partisan or political interests ... or concerns." *Stott*, 916 F.2d at 141 (internal quotations omitted). If so, then the court next must "examine the particular responsibilities of the position to determine whether it resembles a policymaker, a privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation is an equally appropriate requirement." *Id.* at 142 (internal quotations omitted).

In the Fourth Circuit, *Elrod* cases have fallen into two primary categories: (1) cases in which the person terminated is actively associated with a political party (or actively chooses not to be so associated) and the individual making the firing decision is a person seeking office; or (2) cases in which newly elected or appointed officials fire supporters of their rivals during a political transition. *Frye*, 488 F.3d at 269 (citations omitted). For an example of the former category, in *Knight v. Vernon*, the plaintiff, a former jailer, sued the

---

6. Interestingly, however, neither party has argued whether the Plaintiff's position is even

the type of position to which the patronage protections extend.

sheriff who fired her, claiming that her termination was an act of patronage in violation of the First Amendment. 214 F.3d 544, 545–48 (4th Cir.2000). In *Knight*, the sheriff, who was running for reelection, used staff meetings to promote his reelection campaign, urging employees to donate money, display signs, and attend events. *Id.* at 547. The plaintiff did not participate in these activities, and when she expressed concern about her job security, the sheriff told her to get involved in his campaign. *Id.* at 547–48. The sheriff fired the plaintiff after he won the election. On appeal, the Fourth Circuit reversed the district court's grant of summary judgment in favor of the government employer, finding that political allegiance was not an appropriate requirement for a jailer and that the plaintiff therefore had stated a claim under *Elrod. Id.* at 545.

Because the plaintiff in *Knight* was terminated after the sheriff won the election, *Knight* is similar to the latter category of *Elrod* cases.

> Indeed, the lines between the two types of *Elrod* cases are not always bright and distinct. However, in the first type, the official's act seems to be a *punishment* of the fired employee for her affiliation or nonaffiliation, whereas in the second type of case, the punishment of the fired employee is incidental to the firing official's real motivation to *reward* loyal supporters for their affiliation with him.

*Frye*, 488 F.3d at 269, n. 4.

In *Jenkins v. Medford*, the Fourth Circuit considered the firings of two deputies by a North Carolina sheriff because the deputies failed to support the sheriff in the election. 119 F.3d 1156, 1159 (4th Cir. 1997). In *Jenkins*, the fired deputies had supported the losing candidate and were fired by the winning candidate. The Fourth Circuit determined that the office of deputy is that of a policymaker, and therefore, the deputies were lawfully terminated for political reasons, an exception to *Elrod/Branti. Id.* at 1164.

■ Here, even assuming that the Plaintiffs position was the type of position to which *Elrod's* protections extend, it nevertheless appears that the Plaintiff has again failed to show a direct connection between Smith's political association, the Plaintiffs political association, and the Plaintiff's termination.

The Plaintiff alleges that she remained neutral during the campaign and that Smith terminated her for her perceived lack of loyalty. The Plaintiff testified that she was not required to campaign for Smith and that she did not campaign on behalf of any candidate. Nevertheless, she asserts that it was clear to her that she would need to support Smith to keep her job and that her termination a mere two days after the election shows that her termination was based on her failure to support Smith's campaign.

In contrast, Smith testified that she terminated the Plaintiff for her disloyalty and because Judge Mullen came to her the Monday before the election and told her about the Plaintiff's solicitation of her secretary. The Plaintiff denies having solicited Judge Mullen's secretary; however, even accepting the Plaintiff's version of the facts as true (that is, assuming that she did not solicit Judge Mullen's assistant and that she was never disloyal), it is still undisputed that Judge Mullen told Smith that the Plaintiff had solicited her assistant to work for the new clerk and that Smith chose to believe Judge Mullen rather than the Plaintiff. As Smith testified in her deposition:

> I said, well, Joni, Judge Mullen has told me that you solicited her assistant to work for the new clerk. Joni said, I did not; I have never been disloyal to you. I said, I have got you on one side and a circuit judge and many other judges—I

mean other lawyers, voters and another elected official on the other side; I cannot have an employee that will interfere with a judge's employee on my staff. . . . (Entry 103–2 at 4–5.) Here, Smith, in ensuring the order and efficiency of the Clerk's Office, had an adequate reason to terminate the Plaintiff. *See Frye*, 488 F.3d at 271 (finding that the judge's belief that the plaintiff supported her son's candidacy and that such support may present a conflict of interest and hinder the efficient administration of the judicial system was "more than an adequate reason to dismiss an employee" in the context of at-will employment).

Nevertheless, even assuming that the Plaintiff has alleged facts sufficient to state a constitutional violation, the next question for purposes of qualified immunity is whether that right was "clearly established" at the time of the Plaintiff's termination. Here, where it is not even clear whether the Plaintiff's position is one to which the *Elrod–Branti* protections apply, and where this Court cannot find a § 1983 case directly on point, any unlawfulness of Smith's actions in firing the Plaintiff (particularly in light of the specific circumstances of this case) would have been unapparent and therefore not likely to be known by a reasonable person. Accordingly, the Court finds that, even assuming the Plaintiff has alleged facts sufficient to state a constitutional violation, Smith is nonetheless entitled to qualified immunity.[7] As the Fourth Circuit stated in *Conner v. McGraw*:

> The area of discharge for the exercise of First Amendment rights, whether of

free speech or political association, is one of the most complex that we have to apply. When the courts have applied it inconsistently to justify dismissals of some employees and not others, it is simply expecting far too much of an objectively reasonable elected chief clerk to conclude that he is not entitled to fire his chief deputy clerk when he takes office in order to have his own administration carry out the policies of his campaign.

104 F.3d 358 (4th Cir.1996) (table) (unpublished) (finding that the Clerk was entitled to qualified immunity for terminating the Deputy Clerk following election).

### CONCLUSION

Based on the foregoing and for the reasons stated on the record during the hearing, it is hereby

**ORDERED** that Defendant Smith's motion for summary judgment (Entry 66) is granted with respect to the Plaintiff's § 1983 claim against Smith in her individual capacity, and this matter is ended.

**IT IS SO ORDERED.**

---

7. In *Frye,* the Honorable Diana Gibbon Motz wrote an opinion concurring in part and concurring in the judgment, finding:

> This may be an unfair reason for firing Ms. Smith but, because she was an at-will employee, Judge Frye could fire her for no reason or any reason at all—except an unlawful reason. I believe that she has al-

leged facts sufficient to make out a claim that the firing was unlawful; but given the dearth of authority to that effect, I cannot conclude that Judge Frye was on "fair notice" of this. As such, Judge Frye is entitled to qualified immunity.
488 F.3d at 277.